592

PARKRIDGE ASSOCIATES, LTD., *Plaintiff*, v. LEDCOR INDUSTRIES, INC., *Appellant*, NIDASH, INC., *Respondent*.

*John T. Dalton, Jr.* and *Nathaniel J.R. Smith* (of *Merrick, Hofstedt & Lindsey, P.S.*), for appellant.

*John P. Hayes, Ray P. Cox, Devon P. Groves,* and *Castromo L. Preston, Jr.* (of *Forsberg & Umlauf, P.S.*), for respondent.

Cox, A.C.J. — At issue is whether either the statute of repose applicable to claims arising from construction, alteration, or repair of improvements to realty[1] or the respective applicable statutes of limitation for the claims asserted bar this third party action. We also decide whether the statute of repose applies to a claim for equitable indemnity. Because the statute of repose applies to Ledcor Industries, Inc.'s equitable indemnity claim and that claim accrued more than six years after both the substantial completion date of the project and the date of termination of services by Nidash, Inc., d/b/a Roy Freeman Roofing Co. (Freeman), we affirm the trial court's summary dismissal of that claim. We affirm the dismissal of the claim for breach of the contractual duty to indemnify because it also accrued after the term of the statute of repose. We reverse the dismissal of the claim for the alleged failure to perform the work in accordance with the terms of the subcontract because there

---

[1] RCW 4.16.310.

are genuine issues of material fact regarding accrual of that claim.

The material facts are largely undisputed. Ledcor, a general contractor, sued Freeman, one of its subcontractors, after being sued by Parkridge Associates, Ltd. Ledcor was the general contractor for a construction project at the Parkridge Apartments. Freeman subcontracted with Ledcor to provide roofing, waterproofing, deck coating, and metal work for the Parkridge project in February 1993. An addendum to the subcontract provided that Freeman would defend, indemnify, and hold Ledcor harmless from any claims resulting from services performed by Freeman.

The date of substantial completion of the project was December 30, 1993. The parties dispute whether Freeman continued to perform work at the project until December 5, 1994. They also dispute the nature of the work, if any, that Freeman performed after the date of substantial completion.

On November 29, 1999, Parkridge sued Ledcor for product and workmanship failures and defects at the apartment complex. On May 19, 2000, Ledcor tendered defense of the suit to Freeman. Freeman did not accept that tender. On August 29, 2000, Ledcor commenced this third party action against Freeman and others. Ledcor stated nine causes of action in its third party complaint. Among them were: failure to defend, contractual indemnification, breach of express contractual warranties, and a cause of action described as "breach of contract (other)." This latter claim alleges an agreement to "perform work in accordance with the terms and conditions" of the subcontract. In this third party complaint, Ledcor again sought indemnification and defense by Freeman.

On December 22, 2000, Ledcor and Parkridge mediated a settlement. The terms of the settlement are confidential, but Ledcor represents that it and others paid Parkridge a sum "well into seven figures." Neither Freeman nor another

third party defendant participated in the settlement.[2] Ledcor asserts that Freeman's allegedly defective work accounts for a significant portion of the amount of the settlement payment. Therefore, Ledcor primarily seeks contribution from Freeman for a proportionate share of the settlement paid to Parkridge.

Freeman moved for summary judgment on Ledcor's claims, arguing that they were barred by the six-year written contract statute of limitations and the construction statute of repose. The trial court concluded that the statute of repose barred all claims asserted in the third-party complaint, and dismissed the action.

Ledcor appeals.

## STATUTE OF REPOSE

Ledcor argues that the record shows that Freeman provided services at the Parkridge apartments until December 5, 1994, and that the beginning of the six-year period of the statute of repose should be calculated from that date. Considering all facts and reasonable inferences in the light most favorable to Ledcor, we agree that the relevant date for summary judgment purposes is December 5, 1994, the date of "termination of [enumerated] services" under the statute of repose.

We may affirm an order granting summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[3] All facts and reasonable inferences must be considered in the light most favorable to the nonmoving party.[4] We review

---

[2] Concrete and Steel Systems, Inc., is a third party defendant, but not a party to this appeal. Ledcor represents that its claims against Concrete await the outcome of this appeal.

[3] CR 56(c).

[4] *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

questions of law de novo.[5] A material fact is one upon which the outcome of the litigation depends.[6] Summary judgment is proper when reasonable minds could reach but one conclusion regarding the material facts.[7]

██ Our Supreme Court, in *Del Guzzi Construction Co. v. Global Northwest Ltd.*,[8] explained that RCW 4.16.310, the statute of repose, requires a two-step analysis. "First, the cause of action must accrue within 6 years of substantial completion of the improvement [or the date of termination of the enumerated services, whichever is later]; and second, a party then must file suit within the applicable statute of limitation, depending on the type of action."[9] Our Supreme Court has also described the difference between a statute of limitation and a statute of repose. While a statute of limitation "bars plaintiff from bringing an already accrued claim after a specified period of time," a statute of repose "terminates a right of action after a specific time, even if the injury has not yet occurred."[10]

As *Del Guzzi* directs, our analysis begins with the statute of repose, RCW 4.16.310:

> *[a]ll* claims or causes of action as set forth in RCW 4.16.300 *shall accrue, and the applicable statute of limitation shall begin to run only* during the period within six years after *substantial completion of construction, or* during the period within six years after the *termination of the services enumerated in RCW 4.16.300, whichever is later.*[11]

---

[5] *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 813, 854 P.2d 1072 (1993).

[6] *Greater Harbor 2000 v. City of Seattle*, 132 Wn.2d 267, 279, 937 P.2d 1082 (1997).

[7] *Dien Tran v. State Farm Fire & Cas. Co.*, 136 Wn.2d 214, 223, 961 P.2d 358 (1998).

[8] 105 Wn.2d 878, 719 P.2d 120 (1986).

[9] *Del Guzzi*, 105 Wn.2d at 883.

[10] *Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 211-12, 875 P.2d 1213 (1994).

[11] (Emphasis added.)

Furthermore, RCW 4.16.300 through RCW 4.16.320 apply to:

> *all* claims or causes of action of any kind against any person, *arising from* such person having constructed, altered or repaired any improvement upon real property, or having performed or furnished any design, planning, surveying, architectural or construction or engineering services, or supervision or observation of construction, or administration of construction contracts for any construction, alteration or repair of any improvement upon real property.[12]

Ledcor argues and provides evidence that the work Freeman performed at Parkridge until December 5, 1994 qualifies as "services" for purposes of RCW 4.16.300. In response, Freeman argues that there must be a nexus between the services performed and the cause of action.

We agree with both contentions. The plain language of RCW 4.16.300, describing actions or claims "arising from" various services, shows that the services considered in this assessment must be those that gave rise to the cause of action. More importantly, considering the evidence in this record in the light most favorable to Ledcor, Freeman provided services of the type required by the statute until December 5, 1994.

This court's opinion in *1519-1525 Lakeview Boulevard Condominium Ass'n v. Apartment Sales Corp.*[13] is instructive. There, condominium owners and their association sued several contractors who had built a group of condominiums. While some of the contractors provided services after the date of substantial completion, not all did. This court held that for the contractors performing those final services, the statute ran from the date the last service was provided; but for the others, it ran from the date of substantial completion.[14] Here, the work Freeman did after the date of substantial completion and until December 5,

---

[12] RCW 4.16.300 (emphasis added).

[13] 101 Wn. App. 923, 6 P.3d 74 (2000), *aff'd*, 144 Wn.2d 570, 29 P.3d 1249 (2001).

[14] *Lakeview Blvd. Condo. Ass'n*, 101 Wn. App. at 930.

1994 was arguably work from which Ledcor's cause of action arose. In any event, Freeman failed in its burden to show the absence of a genuine issue of material fact on this issue.

Freeman claims that the work performed after the date of substantial completion was "warranty repairs" or "punch list" work that had no nexus to the contract and initial construction work on which the lawsuit is based. Nothing in the record supports this bare assertion. But even if Freeman had provided evidence to support this argument, there would be, at most, a genuine issue of material fact on the question. Summary judgment would not have been proper. Accordingly, the date of termination of services, December 5, 1994, controls, not the December 30, 1993 date of substantial completion of the project.

*Del Guzzi* requires that we determine the dates within which each asserted claim must accrue. Because we hold that for summary judgment purposes the controlling date for the beginning of the relevant period is December 5, 1994, the end of the relevant period for the statute of repose was December 5, 2000, six years later. Therefore, each of Ledcor's claims must have accrued within that term to satisfy the statute of repose.

## EQUITABLE INDEMNITY

Ledcor argues that RCW 4.16.310 does not apply to its equitable indemnification claim because the claim did not arise from construction problems but from Ledcor's payment of a debt rightfully Freeman's. Ledcor also argues that this claim accrued when Parkridge commenced the underlying action. We disagree with both contentions.

Ledcor relies on *Central Washington Refrigeration, Inc. v. Barbee*[15] to support this argument. That case arose when Central contracted with the owner of an orchard to build cold storage rooms. Central purchased refrigeration coils

---

[15] 133 Wn.2d 509, 946 P.2d 760 (1997).

from Barbee and installed them.[16] The cold storage rooms were problematic; the owner of the orchard refused to pay; Central sued; and the orchard counterclaimed. After the counterclaim, Central filed a third party complaint against Barbee, alleging the coils were defective and caused all the problems. Central sought contribution and/or indemnity from Barbee for any damages due the orchard.[17]

Our Supreme Court identified the claim at issue as "implied contractual indemnity," or "implied in fact" indemnity.[18] This kind of indemnity accrues when one party incurs a liability another should discharge by virtue of the nature of the relationship between the two parties.[19] The court stated that "[i]ndemnity actions are distinct, separate causes of action from the underlying wrong and are governed by separate statutes of limitations."[20] Focusing on this language, Ledcor argues that the equitable indemnity claim in this case would be a new cause of action, arising from its payment of the settlement, not from the construction. According to Ledcor, this removes the claim from the reach of the statute of repose. This argument is unpersuasive, and we reject it.

First, the *Barbee* court did not decide the question now before us: whether equitable indemnity claims that arise from construction are subject to the statute of repose. As the *Barbee* court stated, one issue before it was whether a buyer may maintain an indemnity action against a seller based on breach of warranty.[21] The only other question was when the applicable statute of limitation commenced to run.[22] Because of the distinction between a statute of repose and a

---

[16] *Barbee*, 133 Wn.2d at 511.

[17] *Barbee*, 133 Wn.2d at 512.

[18] *Barbee*, 133 Wn.2d at 513.

[19] *Barbee*, 133 Wn.2d at 513.

[20] *Barbee*, 133 Wn.2d at 517.

[21] *Barbee*, 133 Wn.2d at 512.

[22] *Barbee*, 133 Wn.2d at 512-13.

statute of limitation,[23] *Barbee* simply had nothing to do with the statue of repose.

 Second, the proper inquiry is whether the legislature intended to include equitable indemnity claims within the broad sweep of RCW 4.16.310. We determine legislative intent by construing the relevant statutes.[24] When reading a statute, we will not construe language that is clear and unambiguous, but will instead give effect to the plain language without regard to rules of statutory construction.[25] But where a statute is unclear or ambiguous, we apply rules of statutory construction to determine the legislature's intent and purpose.[26] We will construe statutes to avoid strained or absurd results.[27]

 RCW 4.16.300 states that RCW 4.16.300–.320 "shall apply to *all claims or causes of action of any kind* against any person, *arising from* such person having constructed, altered or repaired any improvement upon real property."[28] The legislature's choice of the words *"all* claims or causes of actions *of any kind* . . . arising from . . . construct[ion]" is broad and sweeping.[29] The dictionary defines the adjective "all" as meaning, variously, "being or representing the entire or total number, amount, or quantity," "constituting, being, or representing the total extent or the whole," "being the utmost possible of," "every," "any whatsoever," and other, similarly comprehensive terms.[30] We do not read the word "all" or the phrase "of any kind" to imply an exception for equitable indemnity claims.

---

[23] *Rice*, 124 Wn.2d at 211-12.

[24] *Health Ins. Pool v. Health Care Auth.*, 129 Wn.2d 504, 508, 919 P.2d 62 (1996).

[25] *Allan v. Dep't of Labor & Indus.*, 66 Wn. App. 415, 418, 832 P.2d 489 (1992).

[26] *Harmon v. Dep't of Soc. & Health Servs.*, 134 Wn.2d 523, 530, 951 P.2d 770 (1998).

[27] *State v. Akin*, 77 Wn. App. 575, 580, 892 P.2d 774 (1995).

[28] (Emphasis added.)

[29] (Emphasis added.)

[30] The American Heritage Dictionary of the English Language 47 (3d ed. 1992).

Ledcor also appears to argue that the "arising from such person having constructed . . . ." language of the statute excludes equitable indemnity claims because such claims arise from payment of an obligation of another, not construction, etc. Ledcor reads the statute too narrowly. "Arising from" is a phrase with a well established legal meaning. The phrase " 'arising out of' " means " 'originating from,' " " 'having its origin in,' " " 'growing out of,' " or " 'flowing from.' "[31] To read the statute to impliedly exclude equitable indemnity claims is an absurd view of the statute. Given the purpose of the statute of repose, we do not conclude that the legislature would have intended such a result. The plain words of this statute defeat Ledcor's assertions that equitable indemnity is outside the scope of the statute.

Next, Ledcor argues that summary judgment was improper because the equitable indemnity claim accrued when Ledcor was sued by Parkridge, rather than when it settled with Parkridge. Again, we disagree.

▇▇▇ As to accrual of the cause of action, *Barbee* does control. It states "[i]t is settled law that [equitable] indemnity actions accrue when the party seeking indemnity pays or is legally adjudged obligated to pay damages to a third party."[32] The court in *Barbee* cites to a series of cases that state that the cause of action in equitable indemnity does not accrue at the time of the initial injury but at the time that the indemnitee pays the judgment.[33] Accordingly, Ledcor's claim for equitable indemnity is controlled by *Barbee*. Ledcor's argument to the contrary is unsupported by legal authority and contrary to this clear precedent.

Here, Ledcor's equitable indemnification claim accrued, at the earliest, when it reached a settlement agreement

---

[31] *Beckman v. Connolly*, 79 Wn. App. 265, 273, 898 P.2d 357 (1995) (quoting *Toll Bridge Auth. v. Aetna Ins. Co.*, 54 Wn. App. 400, 404, 773 P.2d 906 (1989); *Avemco Ins. Co. v. Mock*, 44 Wn. App. 327, 329, 721 P.2d 34 (1986)).

[32] *Barbee*, 133 Wn.2d at 517.

[33] *Barbee*, 133 Wn.2d at 517-18 (citing *Smith v. Jackson*, 106 Wn.2d 298, 302, 721 P.2d 508 (1986); *Earley v. Rooney*, 49 Wn.2d 222, 228, 299 P.2d 209 (1956); *Hanscome v. Perry*, 75 Md. App. 605, 542 A.2d 421, 425 (1988); 42 C.J.S. *Indemnity* § 44, at 137 (1991)).

with Parkridge on December 22, 2000. It may even have accrued later, but the record is unclear precisely when payment was made. The critical point is that either date was after December 5, 2000, the date marking the end of the period mandated by the statute of repose.

Because the statute of repose bars the claim, we need not address whether suit was timely under the proper statute of limitation for equitable indemnity. Accordingly, summary judgment of dismissal of the equitable indemnity claim was proper.

## CONTRACTUAL INDEMNITY

 Ledcor next argues that its claims under the subcontract's written duty to defend, indemnify, and hold harmless provisions accrued when it received notice of Parkridge's suit on November 30, 1999. Freeman argues that Ledcor's causes of action for indemnity and defense both accrued when Freeman breached the subcontract by rejecting the tender of defense. We hold that the contractual indemnity claim had not accrued as of December 5, 2000, and is thus barred by the statute of repose.

Ledcor's claim is based on an indemnification addendum to its subcontract with Freeman. Therein, Freeman agreed to defend, indemnify and hold Ledcor harmless from "any and all claims, demands, *losses and liabilities*."[34] Both parties appear to argue that the duty to defend and the duty to indemnify accrued at the same time. But the duty to defend and the duty to indemnify do not necessarily accrue together.[35]

Ledcor does not argue on appeal the duty to defend claim. Thus, we do not further consider that matter. Instead, we focus our discussion on the duty to indemnify claim.

---

[34] (Emphasis added.)

[35] *Koch v. City of Seattle*, 9 Wn. App. 580, 584, 513 P.2d 573, *review denied*, 83 Wn.2d 1004 (1973); *George Sollitt Corp. v. Howard Chapman Plumbing & Heating, Inc.*, 67 Wn. App. 468, 475, 836 P.2d 851 (1992).

Generally there is a breach of the covenant of indemnity and the indemnitee's right to recover accrues when the liability has become fixed and absolute.[36] An indemnitor's liability to the indemnitee accrues when, under the terms and conditions of the contract, the covenant of indemnity is broken.[37] Consistent with these general principles, our Supreme Court stated in *Barbee* that it is "settled law that indemnity actions accrue when the party seeking indemnity pays or is legally adjudged obligated to pay damages to a third party."[38] We see no reason to apply a different rule for accrual of the duty to indemnify under contractual indemnity. Here, the indemnity agreement stated that Freeman agreed to indemnify and hold Ledcor harmless from "losses and liabilities." Such "losses and liabilities," the terms relevant to the duty under this indemnity agreement, were not established as of December 5, 2000, the bar date under the statute of repose. As of that date, mere allegations established *potential*, not actual, liability. Thus, there was no breach of any duty to indemnify under the subcontract's addendum as of that date.

Freeman argues that our Supreme Court's holding in *Schwindt v. Commonwealth Insurance Co.*[39] supports its position. That was a case in which a contractor sued its insurer for breach of the insurance contract between them. Our Supreme Court held that if an insurer's policy provided coverage for the damages claimed by its insured, the insurer breached the contract when it wrongfully denied coverage.[40] Thus, the claim accrued when the insurer wrongfully denied coverage, not at the time that the in-

---

[36] 42 C.J.S. *Indemnity* § 21.

[37] 42 C.J.S. *Indemnity* § 21.

[38] *Barbee*, 133 Wn.2d at 517 (citing *Smith*, 106 Wn.2d at 302; *Earley*, 49 Wn.2d at 228; *Hanscome*, 542 A.2d at 425; 42 C.J.S. *Indemnity* § 44, at 137).

[39] 140 Wn.2d 348, 997 P.2d 353 (2000).

[40] *Schwindt*, 140 Wn.2d at 353.

sured suffered the loss, because "until such time, [the insurance company] had not committed a wrongful act."[41]

Freeman argues that there was no breach of the duty to indemnify Ledcor until some point after Ledcor presented Freeman with the claim in May 2000, and it failed to honor its duty of indemnity under the addendum to the subcontract. *Schwindt* is consistent with the principle that we apply here. As of the bar date of the statute of repose (December 5, 2000) under the summary judgment analysis we apply here, there was no breach of the duty to indemnify for "losses or liabilities."[42] Accordingly, there was no timely accrual of the action for contractual indemnity.

Ledcor also argues that the canons of statutory construction require that we hold that the statutory language "all claims or causes of actions" in RCW 4.16.300 and RCW 4.16.310 creates a meaningful distinction between "claims" and "causes of action." Specifically, Ledcor argues that even if it did not have a *cause of action* until Freeman refused tender, it did have a *claim* for indemnification and defense as soon as it was sued by Parkridge. We disagree.

We construe statutes as a whole to give effect to all the language and to harmonize all provisions.[43] If we were to accept Ledcor's analysis, it would create, in effect, two accrual dates relevant to the statutes of limitations and repose. A party could argue both that the claim accrued at one time and that the cause of action accrued at another, a proposition that is absurd on its face. Because such a reading is both absurd and inconsistent with the remaining language of RCW 4.16.310, we reject the argument.

Ledcor's claim for contractual indemnity, like the claim for equitable indemnity, did not accrue until after the

---

[41] *Schwindt*, 140 Wn.2d at 353.

[42] While Freeman argues that the proper bar date for the statute of repose was December 30, 1999, six years after the date of substantial completion, we rejected that contention in our analysis. Nevertheless, the principle that Freeman argues is correct: its duty to indemnify had not arisen as of the proper bar date under the statute of repose.

[43] *City of Seattle v. Fontanilla*, 128 Wn.2d 492, 498, 909 P.2d 1294 (1996).

expiration of the statue of repose. We need not decide, therefore, whether Ledcor filed suit within the period of the applicable statute of limitations.

## CONSTRUCTION SUBCONTRACT

Ledcor also argues that its breach of contract claim against Freeman based on construction defects accrued when Parkridge Apartments sued Ledcor on November 29, 1999. Freeman argues that any claim based on construction defects must accrue on the date of substantial completion, December 30, 1993. We hold that genuine issues of material fact bar summary judgment on this claim for breach of the subcontract between Ledcor and Freeman.

Following the analysis laid out in *Del Guzzi*, we begin with the statute of repose. As we have already held in this opinion, the term of the statute of repose for summary judgment purposes was from December 5, 1994 to December 5, 2000.

Next, we must determine whether Ledcor's suit satisfies the applicable statute of limitation. Although the parties fail to address in their briefing what limitation statute applies, we presume the six-year written contractual statute of limitation applies to this claim.

Ledcor argues that this cause of action did not accrue until Parkridge sued Ledcor on November 29, 1999. Relying heavily on *North Coast Enterprises, Inc. v. Factoria Partnership*,[44] Freeman argues that breach of a construction contract always occurs no later than the substantial completion of a project. We are unpersuaded that either party is correct.

In *North Coast*, this court refused to apply the discovery rule to a construction contract, but a more recent

---

[44] 94 Wn. App. 855, 859, 974 P.2d 1257 (citing *City of Algona v. City of Pacific*, 35 Wn. App. 517, 521, 667 P.2d 1124 (1983)), *review denied*, 138 Wn.2d 1022 (1999).

decision of this court has done so.[45] Under the discovery rule, the cause of action accrues and the statute of limitation begins to run when a plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the facts that give rise to the claim.[46] In *Architechtonics Construction Management, Inc. v. Khorram*, this court held that "[t]he statute of limitation for contract actions begins to run when a party knows or, in the exercise of due diligence should know, of the other party's breach."[47]

█ It is unclear from the record before us whether Ledcor, in the exercise of due diligence, should have discovered the alleged breach of contract before it did. For example, if Parkridge's suit is based, in part, on work Freeman did after the date of substantial completion, we fail to see the relevance of that date as a bar date for this action. Likewise, it is unclear whether the types of alleged defects could have been discovered earlier. In short, these questions present genuine issues of material fact. Accordingly, we reverse the dismissal of this claim for breach of the subcontract.

We affirm summary judgment dismissal to the extent of the equitable indemnity claim and the breach of the duty to indemnify. We reverse the dismissal of the breach of subcontract claim, and remand for further proceedings.

GROSSE and KENNEDY, JJ., concur.

---

[45] *Architechtonics Constr. Mgmt., Inc. v. Khorram*, 111 Wn. App. 725, 737, 45 P.3d 1142 (2002).

[46] *Architechtonics*, 111 Wn. App. at 728.

[47] *Architechtonics*, 111 Wn. App. at 737.