[No. 28488-3-III.   Division Three.   July 19, 2011.]

DAVID E. WILSON, *as Personal Representative*, ET AL., *Appellants*, v. TERRI L. GRANT ET AL., *Respondents*.

*Mark D. Kamitomo* (of *The Markam Group PS*), for appellants.

*Steven F. Fitzer* (of *Fitzer Leighton & Ayers LLC*); *Melanie T. Stella* (of *Stone Novasky LLC*); *Timothy R. Gosselin* (of *Gosselin Law Office PLLC*); and *Jerome R. Aiken* (of *Meyer Fluegge & Tenney PS*), for respondents.

¶1 SWEENEY, J. — The superior court dismissed this survival action for damages after concluding that the decedent was not survived by any of a group of statutorily designated beneficiaries. We conclude that her estate was entitled to prosecute the action for economic damages regardless of whether she had beneficiaries who might have been entitled to noneconomic damages like pain and suffering. We also conclude that issues of fact remain over whether the emergency room physician who treated the decedent was an apparent agent of the hospital where the physician worked. We therefore reverse the summary dismissal and remand.

## FACTS

¶2 Sandra R. Wilson was a 35-year-old physician. She worked at Sunnyside Community Hospital in Sunnyside, Washington. She experienced a bout of nausea, vertigo, and speech problems on April 2, 2006. She went to Sunnyside Hospital for treatment. There, she was treated by emergency room physician Terri L. Grant. Dr. Grant treated her for migraine headaches because Dr. Wilson had a history of migraine headaches. Dr. Grant ultimately gave her a drug called Imitrex. It improved the vertigo but not the headache. Shortly thereafter, the headache worsened. Dr. Grant again administered Imitrex. Dr. Wilson then began having multiple seizures and her oxygen levels dropped. She was eventually transferred to Sacred Heart Medical Center in Spokane, Washington.

¶3 Sacred Heart physicians concluded that Dr. Wilson had suffered bilateral pontine infarcts from a congenital basilar artery narrowing which was complicated by administration of Imitrex for basilar migraines. An "infarct" is an area of tissue in an organ or part thereof that undergoes necrosis following cessation of blood supply. TABER'S CYCLOPEDIC MEDICAL DICTIONARY 982 (17th ed. 1993). Dr. Wilson's

condition progressively declined to a vegetative state. She died on April 5, 2006. She was not married, nor did she have any children or others dependent on her for support. Dr. Wilson is survived by her parents and two brothers.

PROCEDURAL HISTORY

¶4 Dr. Wilson's father, David Wilson,[1] was appointed personal representative of his daughter's estate. He sued the hospital and Dr. Grant for damages on behalf of her estate based on a claim of medical negligence. He alleged that Dr. Grant was the apparent agent of the hospital and therefore the hospital was vicariously liable for her negligence.

¶5 The hospital and Dr. Grant both moved for summary judgment. Both argued that the estate was not entitled to any recovery because Dr. Wilson was not survived by any statutorily recognized beneficiaries (spouse, domestic partner, dependent children, or other dependent close relatives). The hospital also argued that Dr. Grant was an independent contractor, not an employee of the hospital, and therefore the hospital was not liable for her negligence. The superior court agreed and dismissed the suit.

## DISCUSSION

¶6 Statutory interpretation is always a question of law that we review de novo. *Philippides v. Bernard*, 151 Wn.2d 376, 383, 88 P.3d 939 (2004).

¶7 Causes of action for wrongful death and causes of action based on survival statutes are creatures of the legislature; neither was recognized at common law. *Id.* at 390. And so those statutes must be strictly construed. *Baum v. Burrington*, 119 Wn. App. 36, 41, 79 P.3d 456 (2003). We will, nonetheless, apply the plain meaning of a clear statute. *Mortell v. State*, 118 Wn. App. 846, 849, 78 P.3d 197 (2003).

---

[1] David Wilson is also a physician. We will use his first name to avoid confusion with his daughter and, of course, intend no disrespect.

We will give effect to all of the language in a statute and try to harmonize the statute with related statutes. *Id.* Indeed, "[s]tatutes relating to the same subject matter will be read as complimentary." *Id.* And we will apply a specific statute over a more general statute when both cover the same matter. *Residents Opposed to Kittitas Turbines v. State Energy Facility Site Evaluation Council*, 165 Wn.2d 275, 309, 197 P.3d 1153 (2008).

WASHINGTON'S WRONGFUL DEATH AND SURVIVAL STATUTES

¶8 The parameters of our discussion have been, of course, set by the contentions of the parties. In order to understand those contentions, we briefly survey Washington's wrongful death and survival statutory schemes. Washington has four separate statutory causes of action for wrongful death and survival claims. *See* RCW 4.20.010; former RCW 4.20.020 (1985) (wrongful death); former RCW 4.20.046 (1993); former RCW 4.20.060 (1985) (survival).[2]

Wrongful Death (RCW 4.20.010 and RCW 4.20.020)

¶9 Washington's wrongful death statutes create new causes of action for specific classes of surviving beneficiaries. RCW 4.20.010, .020. RCW 4.20.010 provides:

> When the death of a person is caused by the wrongful act, neglect or default of another his or her personal representative may maintain an action for damages against the person causing the death.

¶10 RCW 4.20.020 then creates a two-tier system of beneficiaries. *Philippides*, 151 Wn.2d at 385. It identifies who may recover under RCW 4.20.010 for wrongful death:

> Every such action shall be for the benefit of the wife, husband, state registered domestic partner, child or children, including

---

[2] This case is governed by the versions of the statutes in effect at the time the cause of action accrued. However, the language in the current versions of the statutes at issue is substantially similar to that of the earlier versions and any differences are inconsequential. We then cite to the current version for purposes of clarity and consistency.

stepchildren, of the person whose death shall have been so caused. If there be no wife, husband, state registered domestic partner, or such child or children, such action may be maintained for the benefit of the parents, sisters, or brothers, who may be dependent upon the deceased person for support, and who are resident within the United States at the time of his or her death.

RCW 4.20.020.

¶11 Dr. Wilson was not survived by any of the beneficiaries recognized by statute and, therefore, does not have a statutory cause of action for wrongful death. And, while the estate asserted a statutory cause of action for wrongful death, it now agrees that it has none because of the absence of those beneficiaries.

Survival Statutes (RCW 4.20.046 and RCW 4.20.060)

■ ■ ¶12 Washington's two survival statutes do not create new causes of action. They instead preserve causes of action for injuries suffered prior to death. *Estate of Otani v. Broudy*, 151 Wn.2d 750, 755, 92 P.3d 192 (2004).

¶13 The general survival statute is RCW 4.20.046(1). It provides that

[a]ll causes of action by a person or persons against another person or persons shall survive to the personal representatives of the former and against the personal representatives of the latter, whether such actions arise on contract or otherwise, and whether or not such actions would have survived at the common law or prior to the date of enactment of this section.

It preserves all causes of action that a decedent could have brought had she survived. *Otani*, 151 Wn.2d at 755-56.

¶14 RCW 4.20.060 is the special survival statute. It provides in relevant part:

No action for a personal injury . . . occasioning death shall abate, . . . if such person has [statutorily recognized beneficiaries]; but such action may be prosecuted, or commenced and prosecuted, by the executor or administrator of the deceased, in favor of such [statutorily recognized beneficiaries].

The statute then limits recovery to specific classes of beneficiaries following personal injury that occasions a death. RCW 4.20.060 "continues 'the cause of action of the decedent for the damages which the decedent could have claimed had the death not occurred,'" but those damages "'do not go through the estate, but are distributed directly to the statutory beneficiaries.'" *Tait v. Wahl*, 97 Wn. App. 765, 771, 987 P.2d 127 (1999) (quoting *Parrish v. Jones*, 44 Wn. App. 449, 454-55, 722 P.2d 878 (1986)). So recovery under the general survival statute (RCW 4.20.046) benefits the decedent's estate and recovery under the special survival statute (RCW 4.20.060) benefits a statutorily favored group of beneficiaries. *Otani*, 151 Wn.2d at 756.

CONTENTIONS

¶15 The estate contends that economic damages (as opposed to noneconomic damages like pain and suffering) are recoverable by the estate of a decedent under RCW 4.20.046. Dr. Grant and the hospital respond that RCW 4.20.046 requires that Dr. Wilson be survived by statutory beneficiaries in order for the estate to recover. Dr. Grant also argues that the special survival statute (RCW 4.20.060) controls over the general survival statute (RCW 4.20.046) and therefore, again, the estate must benefit the statutorily designated beneficiaries to proceed. The estate argues that RCW 4.20.046 permits it to recover for the net accumulations that the estate would have acquired if the decedent had survived to her life expectancy. Appellant's Br. at 14 (citing *Federated Servs. Ins. Co. v. Pers. Representative of Estate of Norberg*, 101 Wn. App. 119, 126, 4 P.3d 844 (2000)).

ANALYSIS

¶16 All parties agree that we are concerned here only with the survival statutes (RCW 4.20.046 and .060) and not the wrongful death statutes (RCW 4.20.010 and .020). The question before us then is whether the court properly dismissed the estate's claim for economic damages under Washington's general survival statute.

■ ¶17 The general survival statute, RCW 4.20.046(1), preserves all causes of action that a decedent could have brought if he or she had survived. *Otani*, 151 Wn.2d at 755-56. "The damages recovered under this statute are included in the assets of the decedent's estate, as well as recovery of a decedent's hospital and medical expenses." *Id.* at 756 n.3 (citation omitted).

¶18 Dr. Grant argues that the estate's take on the statutory scheme could lead to an incongruous and absurd result. She is concerned that a testamentary beneficiary of a will, for example a charity, could be entitled to the economic damages pursuant to RCW 4.20.046, but not by RCW 4.20.060 where only the statutory beneficiaries would be entitled to the award of those economic damages. The statutes address this concern when properly read.

¶19 RCW 4.20.046 addresses the rights of the estate and testamentary beneficiaries, or those entitled to intestate distributions. RCW 4.20.060 addresses the rights of the statutorily designated beneficiaries. The claim here is by the estate and not statutorily described beneficiaries as, indeed, there are none.

■ ¶20 RCW 4.20.046 uses the word "all" when referring to the causes of actions preserved. "All" means all. *Parkridge Assocs. v. Ledcor Indus., Inc.*, 113 Wn. App. 592, 602, 54 P.3d 225 (2002). It does not mean simply those causes of action that are not otherwise covered by RCW 4.20.060. The statute does not exclude those cases where the death was caused by personal injury. And the cases that apply RCW 4.20.046 seem to take that approach.

¶21 *Otani* was a survival action. 151 Wn.2d at 752. There, as here, the death resulted from what was alleged to be negligent medical treatment. *Id.* The court addressed the question of whether a so-called loss of enjoyment of life (LOEL) claim was accommodated by RCW 4.20.046. Ultimately, the court agreed with the court of appeals that the estate could recover damages for lost net accumulations of a decedent under the general survival statute but could not recover damages for LOEL under RCW 4.20.046(1) because

LOEL is not an asset that can accrue for the benefit of an estate. *Id.* at 758. Here, the only damages claimed are economic damages, like lost net accumulations.

¶22 *Tait* was also a survival action that followed a traffic accident that caused the death. 97 Wn. App. at 772-74. A nondependent relative sued for economic, as well as non-economic, damages caused by the death. The court held that

> Washington's general survival statute, RCW 4.20.046(1), "does not create a separate claim for the decedent's survivors," but "merely preserves the causes of action a person could have maintained had he or she not died." Therefore, unlike the wrongful death and special survival statutes, the decedent's personal representative can recover damages under RCW 4.20.046(1) on behalf of the decedent's estate . . . limited to the lost net accumulations of the decedent.

*Id.* at 772, 774 (citation omitted) (quoting *Cavazos v. Franklin*, 73 Wn. App. 116, 119, 867 P.2d 674 (1994)).

¶23 And, in *Wooldridge v. Woolett*, the court held that "shortened life expectancy is relevant in a survival action only to the extent it affects the loss of value of a decedent's future earning capacity." 96 Wn.2d 659, 667, 638 P.2d 566 (1981). But there was never any question that the estate was entitled to recover economic damages, again, despite the absence of statutory beneficiaries. *Id.*

¶24 These cases interpret this statutory scheme correctly. They distinguish RCW 4.20.046 from RCW 4.20.060 based on who is entitled to the recovery—the estate or a certain class of statutorily prescribed beneficiaries. Dr. Wilson's family members are not then entitled to recover under RCW 4.20.060 (the special survival statute) but her estate is entitled to recover under RCW 4.20.046 (the general survival statute). The estate does not assert the right to recover noneconomic damages and her survivors do not make a claim for such damages.

¶25 The question under the survival statute is could Dr. Wilson have made the claim had she survived. And she certainly could have maintained an action for her economic

loss. *See Otani*, 151 Wn.2d at 758. The important distinguishing feature between these two survival statutes is not whether the death is occasioned by personal injury, but rather who gets to recover—the estate or the statutory beneficiaries. *Id.* at 762-63.

¶26 And, while the wording of the current statutory scheme informs our analysis, our reading also seems in accord with the purpose of these survival statutes. Washington's general survival statute was enacted to "keep the decedent's claims alive and to allow the personal representative to pursue them." *Norberg*, 101 Wn. App. at 125. Historically, survival actions under former RCW 4.20.046 (1961) were restricted exclusively to economic type damages. *Wooldridge*, 96 Wn.2d at 666; *Cavazos*, 73 Wn. App. at 121 ("Under RCW 4.20.046, the decedent's administrator is entitled to maintain an action for the following damages: disability with its attendant permanent loss of earning power; burial and funeral expenses; medical and hospital expenses; and general damages to the decedent's estate.").

¶27 RCW 4.20.046 was amended in 1993. Prior to 1993, recovery for noneconomic damages such as pain and suffering was available only to statutory beneficiaries under the special survival statute (RCW 4.20.060) and not under the general survival statute.[3] *Compare* LAWS OF 1961, ch. 137, § 1, *with* RCW 4.20.046 *and* RCW 4.20.060. "In other words, if a person survived a tortious act for a period of time but later died, any recovery for pain and suffering actually experienced by the decedent was not permitted." *Otani*, 151 Wn.2d at 756. The earlier version of the statute, then, rewarded those who delayed settlements. *See* H.B. REP. on S.B. 5077, at 2, 53d Leg., Reg. Sess. (Wash. 1993). The later version of RCW 4.20.046 addressed that concern. *See* H.B. REP. on S.B. 5077, at 2.

---

[3] Before 1993, RCW 4.20.046(1) provided that "[a]ll causes of action by a person or persons against another person or persons shall survive to [his or her] personal representatives . . . *Provided, however*, That no personal representative shall be entitled to recover damages for pain and suffering, anxiety, emotional distress, or humiliation personal to and suffered by a deceased." LAWS OF 1961, ch. 137, § 1.

¶28 The hospital and Dr. Grant urge that this new limiting clause in RCW 4.20.046 applies to the entire paragraph. When put in context, however, that approach does not make sense. And there is nothing in the history of RCW 4.20.046 that suggests such a reading. The added proviso simply brought RCW 4.20.046 in line with RCW 4.20.060—the estate is entitled to the economic damages and only the statutory beneficiaries are entitled to the noneconomic damages. There is no suggestion that the legislature intended to limit the traditional recovery of purely economic damages by the estate. Both before and after the 1993 amendment, the estate is entitled to recover economic damages on behalf of the decedent. *Compare* LAWS OF 1961, ch. 137, § 1, *with* RCW 4.20.046. The legislature expanded the scope of the general survival statute while maintaining the estate's right to recover purely economic damages. *See* H.B. REP. on S.B. 5077, at 1-2.

¶29 Dr. Grant and the hospital rely on *Philippides* to argue that any recovery under Washington's wrongful death and survival statutes is precluded without the necessary statutory beneficiaries. 151 Wn.2d at 383. The *Philippides* court made the broad statement that "Washington's four interrelated statutory causes of action for wrongful death and survival each require that parents be 'dependent for support' on a deceased adult child in order to recover. *See* RCW 4.24.010 (child injury/death); RCW 4.20.020 (wrongful death); RCW 4.20.046 (general survival statute); RCW 4.20.060 (special survival statute)." *Id.* at 386. This is accurate so far as it goes. RCW 4.20.010 and RCW 4.20.020 do require that parents establish their dependency on the decedent in order to bring an action to recover damages. Similarly, RCW 4.20.060 requires dependency in order for parents to recover. And, even RCW 4.20.046 requires that parents be dependent on the decedent in order to recover damages for pain and suffering. But we do not read RCW 4.20.046 to require dependency for an estate to recover economic damages. And the court in *Philippides* does not specifically say that. Indeed, the

well-settled understanding seems to be just opposite. *See, e.g., Walton v. Absher Constr. Co.*, 101 Wn.2d 238, 239-45, 676 P.2d 1002 (1984); *Wooldridge*, 96 Wn.2d at 662-65; *Criscuola v. Andrews*, 82 Wn.2d 68, 69-71, 507 P.2d 149 (1973); *Balmer v. Dilley*, 81 Wn.2d 367, 368-72, 502 P.2d 456 (1972); *Warner v. McCaughan*, 77 Wn.2d 178, 181-85, 460 P.2d 272 (1969); *Norberg*, 101 Wn. App. at 125; *Tait*, 97 Wn. App. at 772-75; *Cavazos*, 73 Wn. App. at 120-22; *Wagner v. Flightcraft, Inc.*, 31 Wn. App. 558, 566-68, 643 P.2d 906 (1982).

¶30 Dr. Wilson did not have any statutory beneficiaries. So the claims for noneconomic damages were properly dismissed under RCW 4.20.046. But, an estate can recover economic damages under RCW 4.20.046 as a matter of law and summary dismissal of that claim was therefore error.

¶31 Dr. Wilson could have sued for damages for her economic losses had she survived here. Dr. Wilson did not survive. But her cause of action did, except for those claims for noneconomic damages that required a statutorily specified class of beneficiaries. The limitation on noneconomic damages (to certain classes of family members) set out in RCW 4.20.046 is not inconsistent with the language of RCW 4.20.060 because RCW 4.20.046 would accommodate a cause of action for personal injury that did not result in death. The cause of action for personal injury would survive but with the limitation on general damages. *Otani*, 151 Wn.2d at 762.

*Vicarious Liability*

█ ¶32 The hospital is liable for Dr. Grant's negligence, if she acted on its behalf. *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 46-49, 929 P.2d 420 (1997). The hospital contends that Dr. Grant was an independent contractor and therefore acted on her own behalf and, further, that Dr. Wilson knew this because she also worked at the hospital. An employer is generally not liable for the acts of an independent contractor. *Miles v. Pound Motor Co.*, 10 Wn.2d 492, 498-500, 117 P.2d 179 (1941). However, if the employer retains control

over the independent contractor's work, the employer will be liable. *Hollingberry v. Dunn*, 68 Wn.2d 75, 79-81, 411 P.2d 431 (1966). And, more specifically, here the "application of hornbook rules of agency to the hospital-physician relationship usually leads to unrealistic and unsatisfactory results." *Adamski v. Tacoma Gen. Hosp.*, 20 Wn. App. 98, 105, 579 P.2d 970 (1978).

¶33  Dr. Wilson apparently went for treatment to the Sunnyside Community Hospital emergency room, not just to see Dr. Grant. The hospital provided Dr. Grant to patients who sought emergency room services. An agent-principal relationship exists between a doctor and a hospital when the patient seeks treatment primarily from the hospital rather than from the doctor, and when the hospital pays the doctor's salary. *Id.* at 107-08.

¶34  There is no showing here of an actual agency relationship. But that does not end the inquiry. A hospital may also be liable for the actions of the doctors who use its facilities under the common law theory of apparent agency, even if the doctors were independent contractors. *Id.* at 112. An apparent agency relationship exists when

> [o]ne . . . represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent [and] is [therefore] subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.

RESTATEMENT (SECOND) OF AGENCY § 267 (1958), *quoted with approval in Adamski*, 20 Wn. App. at 112.

¶35  To recover under the theory of apparent agency, the estate must show (1) conduct by the hospital that would cause a reasonable person to believe that Dr. Grant was an agent of the hospital and (2) reliance on that apparent agency relationship by the decedent. *See Adamski*, 20 Wn. App. at 112-15. Certainly, a hospital should not be responsible for the acts or omissions of physicians treating that physician's own patients on the hospital premises. *Id.* at

107. But an emergency room physician does not generally see patients in that capacity. People go the hospital emergency room for emergency room services, not to see a particular physician. And so it was here.

¶36 Dr. Wilson went to the emergency room for treatment of her migraine headache. She did not seek a specific individual to provide the treatment and she did not request particular treatment. The hospital held Dr. Grant out as the emergency room physician providing those services. Emergency room care was an essential part of the hospital's operation. It is therefore not unreasonable that a person would believe Dr. Grant worked for and under the direction of the hospital. Nor is it unreasonable to believe that Dr. Wilson relied on the care and skill of Dr. Grant after neither she nor her physician father could identify the problem. There is at least a question of fact here. *Id.* at 115-16.

¶37 The hospital argues that Dr. Wilson worked at the hospital and knew there were independently contracted physicians working there. The hospital argues that Dr. Wilson's significant other signed a consent to treatment form that disclosed the fact that independent contractors were working at the hospital.

¶38 The record here does not indicate that Dr. Wilson had direct knowledge that Dr. Grant was an independent contractor. And to suggest that she implicitly knew or should have known of Dr. Grant's employment relationship with the hospital because she herself worked at the hospital ignores elements of the apparent agency theory (reasonable belief and reliance). In any event, the fact that Dr. Wilson was also a physician raises a question of fact as to whether she knew Dr. Grant was an independent contractor. *See id.* Additionally, the consent form merely alerted patients to the possibility that a treating physician may be an independent contractor. The form provided that some physicians "may or may not be" employees or agents of the hospital, or may be independent contractors. Clerk's Papers at 514. But, Dr. Grant was not specifically identified as an independent contractor.

¶39 When these facts and reasonable inferences are viewed in a light most favorable to the estate, a jury could find that the emergency room physician, Dr. Grant, was held out as an employee of the hospital.

¶40 We reverse the summary dismissal and remand.

BROWN and SIDDOWAY, JJ., concur.