IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| PUGET SOUND ENERGY, INC., a Washington corporation, | ) ) ) | No. 80162-7-I |
| Appellant, | ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| PILCHUCK CONTRACTORS, INC., a Washington corporation, | ) ) ) | |
| Respondent. | ) ) ) | |

HAZELRIGG, J. — Puget Sound Energy, Inc. (PSE) seeks reversal of summary judgment for Pilchuck Contractors, Inc. PSE contends that the court erred in determining that its claims against Pilchuck were barred by Washington's construction statute of repose. Because PSE's claims arise from the type of activity that the statute was intended to cover and did not accrue within the allowable period, they are barred by the statute of repose. Although PSE urges this court to recognize a fraud exception to the statute, the broad language of the statute indicates the legislature's intent to restrict the application of the discovery rule and establish a firm endpoint of liability for those who engage in construction activities. We affirm.

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

FACTS

Puget Sound Energy, Inc. (PSE) is a public utility company that provides electricity and natural gas service to customers in the Puget Sound region. In 2001, PSE and Pilchuck Contractors, Inc. entered into a Master Services Agreement (MSA) in which Pilchuck agreed to perform construction, operations, and maintenance projects for PSE from time to time. The MSA required Pilchuck to "defend, indemnify and hold harmless PSE from and against any and all Claims or Losses" arising from Pilchuck's conduct as PSE's contractor.

In 2004, PSE contracted with Pilchuck to perform work on the 8400 block of Greenwood Avenue North in Seattle. PSE obtained a permit from the City of Seattle Department of Transportation to install new gas lines "to serve the property lines in the 8400 [block] of Greenwood Avenue North also, to cut and cap existing serves in Greenwood Avenue North." All of the Greenwood gas relocation work in 2004 fell under one "superior work order number," while "specific sub order numbers" described discrete work to be done, and "specific work notification numbers" were assigned to each address to be serviced under a sub order.

The deactivation of the gas service line at 8409 Greenwood Avenue North was assigned work notification number 10552392. The version of the Gas Operating Standards in effect in 2004 required that the following be performed to properly deactivate a gas service line: (1) disconnect the service line from all sources and supplies of gas, (2) purge the line of existing natural gas, (3) seal the line at each end with expansive foam, (4) cut and cap the line, and (5) remove any above-ground portion of the retired or deactivated service line. Compliance with

the Gas Operating Standards is mandatory for PSE employees, service providers, and contractors.

Pilchuck submitted to PSE the required Gas Service Card, commonly referred to as a "D-4 Card," for work notification number 10552392. The D-4 Card, dated September 1, 2004, indicated that the gas service line at 8409 Greenwood Avenue North had been retired. The information on the D-4 Card was entered in PSE's mapping system, and PSE's master map of gas service lines was updated to indicate that the service line no longer existed. Pilchuck finished work on the area of 8400 Greenwood Avenue North in September 2004 and was paid in full. By that time, PSE's customers on the block were receiving gas service through the newly installed service lines.

In the early hours of March 9, 2016, gas leaked from the line and ignited, causing an explosion that destroyed several businesses. The Washington Utilities and Transportation Commission (WUTC) issued an investigation report finding that the gas leak was directly caused by external physical damage to the gas service line. The WUTC determined that "the service line had not been 'cut and capped' as documented by PSE's contractor" and found that "the leak and explosion would not have occurred but for PSE's improper abandonment of the service line in September 2004."

In 2018, PSE filed a lawsuit against Pilchuck for breach of contract, breach of warranties under the MSA, and fraud. PSE argued that Pilchuck was required under the MSA to indemnify PSE for its costs stemming from the emergency response to the explosion, WUTC enforcement proceeding, and third-party claims.

Pilchuck moved for summary judgment, arguing that all of PSE's claims were barred by Washington's construction statute of repose. The court granted summary judgment for Pilchuck. PSE appealed.

ANALYSIS

PSE contends that the trial court erred in granting summary judgment for Pilchuck on the grounds that PSE's claims were barred by the construction statute of repose. We review a summary judgment order de novo, engaging in the same inquiry as the trial court. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). Summary judgment is proper when, viewing all facts and inferences in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

The meaning of a statute is a question of law that we also review de novo. Porter v. Kirkendoll, 194 Wn.2d 194, 200, 449 P.3d 627 (2019); Smith v. Showalter, 47 Wn. App. 245, 248, 734 P.2d 928 (1987). Our purpose in interpreting a statute is to ascertain and carry out the intent of the legislature. Columbia Riverkeeper v. Port of Vancouver USA, 188 Wn.2d 421, 435, 395 P.3d 1031 (2017). If the plain meaning of the statute is clear on its face, we must give effect to that plain meaning as an expression of the legislature's intent. Id. Appellate courts will avoid adding to or taking away from the language of a statute; statutes are construed to avoid rendering any language superfluous, void, or insignificant, and the court cannot insert words that the legislature has chosen not to include. Porter, 194 Wn.2d at 211–12.

To ascertain a statute's plain meaning, courts "consider the text of the provision, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole." Columbia Riverkeeper, 188 Wn.2d at 435. If the meaning of the statute remains unclear or ambiguous after this inquiry, "it is appropriate to resort to canons of construction and legislative history" to determine the legislature's intent. Id.

> Washington's construction statute of repose is set out in two parts:
>
> RCW 4.16.300 defines the scope of the statute and describes those entitled to claim its protection. RCW 4.16.310 defines when this statute of repose bars a claim. Together, they bar certain claims arising from construction of any improvement on real property that have not accrued within six years after substantial completion of construction.

Cameron v. Atl. Richfield Co., 8 Wn. App. 2d 795, 800, 442 P.3d 31 (2019). Washington courts use a three-step analysis in cases involving the statute. Pfeifer v. City of Bellingham, 112 Wn.2d 562, 567, 772 P.2d 1018 (1989). First, we decide whether the claims fall within the scope of the statute. Id. If the statute applies, we determine whether the cause of action accrued within the time period allowed by the statute. Id. Finally, the plaintiff must have filed suit within the appropriate statute of limitation for the cause of action.[1] Id.

---

[1] Although the statute of limitation is relevant to the statute of repose analysis, the two are significantly different. Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Constr. Co., 176 Wn.2d 502, 511, 296 P.3d 821 (2013). "A statute of limitation bars a plaintiff from bringing an accrued claim after a specific period of time. A statute of repose terminates the right to file a claim after a specified time even if the injury has not yet occurred." Id.

I.      Scope of the Statute of Repose

PSE first argues that the statute of repose does not bar its claims against Pilchuck because the claims do not fall within the scope of the statute.  As noted above, RCW 4.16.300 sets out the scope of the statute of repose:

> RCW 4.16.300 through 4.16.320 shall apply to all claims or causes of action of any kind against any person, arising from such person having constructed, altered or repaired any improvement upon real property, or having performed or furnished any design, planning, surveying, architectural or construction or engineering services, or supervision or observation of construction, or administration of construction contracts for any construction, alteration or repair of any improvement upon real property. This section is specifically intended to benefit persons having performed work for which the persons must be registered or licensed under RCW 18.08.310, 18.27.020, 18.43.040, 18.96.020, or 19.28.041, and shall not apply to claims or causes of action against persons not required to be so registered or licensed.

A.  Construction Activities

PSE contends that "there is, at minimum, an issue of material fact precluding summary judgment on whether Pilchuck 'constructed, altered or repaired' an 'improvement,' or 'performed work' to deactivate the subject gas service line."  Pilchuck argues that there is no factual dispute and PSE's argument concerns the legal definition of an "improvement" under the statute of repose.

Washington courts have interpreted the phrase "improvement to real property" as used in the construction statute of repose.  The first in the line of cases concerning this definition found that the replacement and reinstallation of pipe, coils, hangers, and rods in a cold storage warehouse constituted an improvement to real property rather than installation of a removable trade fixture.  <u>Yakima Fruit & Cold Storage Co. v. Cent. Heating & Plumbing Co.</u>, 81 Wn.2d 528, 530–31, 503

P.2d 108 (1972). This court then applied Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co. to determine that a ski lift was an improvement to real property rather than a fixture because it "adds to the value of the property, is an amelioration of its condition, and enhances its use." Pinneo v. Stevens Pass, Inc., 14 Wn. App. 848, 852, 545 P.2d 1207 (1976). We in turn applied Pinneo v. Stevens Pass, Inc. to find that installation of underground power lines was "an improvement upon real property even though potentially subject to removal under some circumstances" because "[t]he power lines add to the value of the property and enhance its use, and Tyee, being a contractor, is clearly within the class to be protected by the statute." Wash. Nat. Gas Co. v. Tyee Const. Co., 26 Wn. App. 235, 239, 611 P.2d 1378 (1980).

PSE does not appear to be arguing that the work, if completed, would not have constituted an improvement. Rather, PSE argues that actions not taken cannot constitute an improvement. However, this argument does not quite square with the definition of "improvement on real property" developed in the case law. Under Washington National Gas Co. v. Tyee Construction Co., gas service lines, like power lines, are an improvement on real property because they add to the value of the property and enhance its use. Id. at 239. Pilchuck was hired to alter these existing improvements. The fact that Pilchuck did not complete that work does not change the status of gas service lines as an "improvement upon real property" for purposes of the statute of repose.

Although Pilchuck contracted with PSE to perform construction work on the gas service line, PSE contends that the question of whether Pilchuck actually

"constructed, altered or repaired" the gas service line affects the applicability of the statute of repose. The parties disagree on the scope of the project relevant to this analysis. Pilchuck contends that the entirety of the work around 8400 Greenwood Avenue North constituted one construction project, as it fell under one superior work order number. In contrast, PSE argues that the court should consider the specific work notification number covering the deactivation of this specific service line as its own project.

This disagreement, however, does not affect the applicability of the statute of repose because the statute evidences a legislative intent to apply broadly to protect contractors such as Pilchuck. This court has noted that the language of RCW 4.16.300 covering "all claims or causes of actions of any kind" is "broad and sweeping." Parkridge Assocs., Ltd. v. Ledcor Indus., Inc., 113 Wn. App. 592, 602, 54 P.3d 225 (2002) (emphasis omitted). As this court recognized in Pinneo, the legislature adopted the statute of repose "to protect architects, contractors, engineers, and others from extended potential tort and contract liability." 14 Wn. App. at 852.

PSE contracted with Pilchuck to retire the gas service line, that is, to alter an improvement on real property, and Pilchuck represented to PSE that it had done so. Had Pilchuck properly retired the gas service line, its conduct would certainly fall within the scope of the statute of repose. The fact that the work was not done as represented may give rise to a claim but does not remove the situation from the purview of the statute of repose. To except this situation from the statute of repose

would not serve the legislature's intent to protect contractors from extended liability. PSE's claims fall within the scope of the statute of repose.

B. Reporting Activities

PSE briefly argues that Pilchuck's submission of a false report on the D-4 Card is not within the scope of the statute of repose because it is not a protected construction activity under the statute. The statute of repose applies to "all claims or causes of action of any kind against any person, arising from such person having constructed, altered or repaired any improvement upon real property, or . . . administration of construction contracts for any construction, alteration or repair of any improvement upon real property." RCW 4.16.300. In this context, "[t]he phrase 'arising out of' means 'originating from,' 'having its origin in,' 'growing out of,' or 'flowing from.'" Parkridge Assocs., 113 Wn. App. at 603.

Both parties cite to Pfeifer in support of their arguments. In Pfeifer, the court engaged in an "activity analysis" to determine whether the claim of concealment during a sale arose from the enumerated activities in the statute. 112 Wn.2d at 567–69. The court reasoned that "[s]elling and building involve different activities" and noted that a seller who was not the builder would not be shielded by the statute of repose for the same conduct. Id. at 568.

PSE contends that the distinction between building and reporting parallels the distinction between building and selling. However, unlike selling a building, "record keeping, certifying records, and reporting a gas service change on a D-4 Card" are activities arising from the construction activities specified in the statute. The MSA between PSE and Pilchuck required Pilchuck to submit such

documentation when performing construction on its gas utilities. The activities are not separable like the activities in Pfeifer. There would be no need to submit a D-4 Card to PSE if Pilchuck had not been engaged in construction activities. The reporting activities arose from the construction activities and the statute of repose applies.

II.     Accrual of Cause of Action

We next consider whether the cause of action accrued within the period allowed by the statute. Pfeifer, 112 Wn.2d at 567. The construction statute of repose bars claims that do not accrue within the allowable period:

> All claims or causes of action as set forth in RCW 4.16.300 shall accrue, and the applicable statute of limitation shall begin to run only during the period within six years after substantial completion of construction, or during the period within six years after the termination of the services enumerated in RCW 4.16.300, whichever is later. The phrase "substantial completion of construction" shall mean the state of completion reached when an improvement upon real property may be used or occupied for its intended use. Any cause of action which has not accrued within six years after such substantial completion of construction, or within six years after such termination of services, whichever is later, shall be barred: PROVIDED, That this limitation shall not be asserted as a defense by any owner, tenant or other person in possession and control of the improvement at the time such cause of action accrues.

RCW 4.16.310. "The fact that additional contract work remains, including punch list work, does not affect the conclusion that a project is substantially complete if it is otherwise fit for occupancy." Dania, Inc. v. Skanska USA Bldg. Inc., 185 Wn. App. 359, 371, 340 P.3d 984 (2014).

Although there does not appear to be any dispute that Pilchuck terminated its work in September 2004, PSE contends that Pilchuck never substantially

completed the construction work on the subject gas service line. The parties again disagree on the scope of the construction. Pilchuck argues that the 8400 Greenwood Avenue North project as a whole was substantially complete because PSE began serving its customers using the new gas lines and PSE treated the subject gas service line as abandoned. PSE contends that Pilchuck did not substantially complete the work of the specific work notification and that "a reasonable jury could find that the businesses in the area could not be used or occupied for their intended purpose when there was a hidden, active, and unmonitored gas line that could break and cause an explosion."

PSE argues that the scope of the project and whether it was substantially complete are disputed issues of fact precluding summary judgment. It submitted as additional authority a recent California case in which the Court of Appeals determined that the contractual standard of substantial completion did not conclusively establish the date of substantial completion for purposes of the statute of repose. Hensel Phelps Constr. Co. v. Super. Ct. of San Diego County, 44 Cal. App. 5th 595, 616, 257 Cal. Rptr. 3d 746 (2020). The California court remarked:

> The date of substantial completion is an objective fact about the state of construction of the improvement, to be determined by the trier of fact. It is a statutory standard, not a contractual one. The parties to a construction contract may not arrogate to themselves the ability to conclusively determine when the statutory limitations period begins to run.

Id. at 613.

Here, no party is arguing for any standard of substantial completion other than that defined in RCW 4.16.310. Again, the scope of the project does not affect the conclusion on this issue. The broader project was substantially complete

because PSE's customers were receiving service via the new gas lines and PSE treated the subject gas service line as retired. PSE does not point to anything in the record to suggest that the businesses in the area were not being used or occupied normally despite the hidden danger of the gas line. The specific project of retiring the subject gas service line was substantially complete because the line was being "used . . . for its intended use," which, in this instance, was disuse. As intended, the subject gas service line was no longer being used to provide gas service to PSE's customers. Because substantial completion and termination of the construction both occurred in 2004 and PSE's claims did not accrue until 2016, the claims accrued outside of the allowable period and are barred by the statute of repose.

III.    Fraud Exception to Statute of Repose

PSE argues that we should recognize a fraud or equitable estoppel exception to the statute of repose. Although PSE cites to cases from multiple other jurisdictions recognizing an exception to the statute of repose when there is evidence of fraud, Washington courts have not yet decided whether a fraudulent concealment exception to the statute of repose exists. In Pfeifer, the Washington Supreme Court declined to address an argument urging the court "to create an exception to the statute for a cause of action based on intentional or fraudulent concealment" and instead resolved the case on the basis of statutory construction. 112 Wn.2d at 569–71. This court has also declined to reach the issue. See 1519-1525 Lakeview Blvd. Condo. Ass'n v. Apartment Sales Corp., 101 Wn. App. 923, 932–33, 6 P.3d 74 (2000). We noted that "[w]hether fraudulent concealment has

the effect of tolling the statute is an unsettled question" but found that we need not resolve the question because there was no evidence of concealment in that case. Id.

In other contexts, Washington courts have generally interpreted the language of the statute of repose broadly in favor of the parties that it is "specifically intended to benefit." RCW 4.16.300. In Parkridge, this court considered "whether the Legislature intended to include equitable indemnity claims within the broad sweep of RCW 4.16.310." 113 Wn. App. at 602. The court noted that "[t]he Legislature's choice of the words 'all claims or causes of actions of any kind . . . arising from . . . construction' is broad and sweeping," and it did not read that language "to imply an exception for equitable indemnity claims." Id. (emphasis omitted) (quoting RCW 4.16.300). Even if a contractor committed an unlawful act by performing work for which it was not licensed, the broad language providing protection for "[a]ny person" allowed the contractor to "fit into the statute regardless of its allegedly having furnished design services in violation of another statute." Yakima Fruit, 81 Wn.2d at 531–32.

PSE argues that, "without a mechanism akin to the discovery rule (like equitable estoppel), businesses can escape penalties by failing to make accurate reports as otherwise required." This court has noted that "RCW 4.16.310 legislatively restricts the application of the discovery rule," under which a cause of action accrues when "'the plaintiff learns of or in the exercise of reasonable diligence should have learned of the facts which give rise to the cause of action.'" Hudesman v. Meriwether Leachman Assocs., Inc., 35 Wn. App. 318, 321, 666 P.2d

937 (1983) (quoting Metro. Servs., Inc. v. City of Spokane, 32 Wn. App. 714, 720, 649 P.2d 642 (1982)). In doing so, the statute "sets an outer limit for discovery" of contractor conduct giving rise to a claim. Id. at 322. Division Three of this court also remarked on the statute's interaction with the discovery rule in Rodriguez v. Niemeyer:

> While important policy reasons support the accrual at discovery rule, we also recognize it may be desirable to place some outer limit upon the delayed accrual of actions in order to avoid an undue burden on potential defendants. . . . The creation of limitation periods is primarily a legislative function, and the legislature has the constitutional power to enact a clear line of demarcation to fix a precise time beyond which no remedy will be available. . . . [RCW 4.16.310] has a broad scope barring [a]ll causes of action that do not accrue within 6 years after substantial completion or termination of any of the specified services, whether the damage was or could have been discovered within that period. This court cannot constitutionally ignore such a clear mandate from the legislature.

23 Wn. App. 398, 400–01, 595 P.2d 952 (1979) (citations omitted) (citing Gazija v. Nicholas Jerns Co., 86 Wn.2d 215, 222 n.2, 543 P.2d 338 (1975)).

Considering the broad language of the statute and Washington courts' repeated deferral to the legislature's authority to limit periods of liability, we decline to adopt an exception to the statute of repose. The plain language of the statute evidences the legislature's intent for the statute to apply broadly to "all claims . . . of any kind" and to restrict the application of the discovery rule, even for latent defects. The trial court did not err in granting summary judgment for Pilchuck.

Affirmed.

WE CONCUR:

Andrus, A.C.J.

Mann, C.J.

- 14 -