177 P.3d 755 (2008)
HARMONY AT MADRONA PARK OWNERS ASSOCIATION, a Washington condominium unit owners association, Plaintiff,
v.
MADISON HARMONY DEVELOPMENT, INC., a Washington corporation, Defendant,
Ledcor Industries (USA), Inc., a Washington corporation, Respondent/Cross-Appellant,
Margaux's Marine Graphics, Inc., a Washington corporation, d/b/a Serock Construction, Appellant/Cross-Respondent.
No. 58416-2-I.
Court of Appeals of Washington, Division 1.
February 25, 2008.
*758 Kenneth James Cusack, Seattle, WA, for Appellant/Cross-Respondent.
Richard Lawrence Martens, Scott Allen Samuelson, Steven A. Stolle, Martens & Associates PS, Seattle, WA, for Respondent/Cross-Appellant.
BAKER, J.
¶ 1 Ledcor Industries, Inc. (Ledcor), the general contractor on a 25-building condominium project, was sued by the owner/developer for construction defects. Ledcor settled with the developer and then sued Margaux's Marine Graphics, Inc., d/b/a Serock Construction (Serock) for breach of contract and indemnification. The trial court awarded Ledcor damages for breach of contract and indemnification against Serock for defects on several buildings. We reverse in part and affirm in part.

I
¶ 2 This case was originally brought by Harmony at Madrona Park Owners Association against defendant Madison Harmony Development, Inc. (Madison) for construction defects in a 25-building, 116-unit condominium complex in Bellevue. Madison, the owner/developer of the project, in turn filed suit against third party defendant Ledcor Industries, Inc., the general contractor for the project. Ledcor filed a fourth party complaint against several of the subcontractors that had worked on the project. Ledcor then settled with Madison. On November 30, 2004, Ledcor filed a second amended complaint, adding more subcontractor-defendants, including Serock. Ledcor claimed that Serock breached its subcontract with Ledcor and failed to meet its indemnification obligations.
¶ 3 Serock subcontracted with Ledcor to complete the exterior trim on thirteen buildings in Phase 1 of the project. The trim included belly bands and vertical trim between the windows. The subcontract required Serock's work to be done "in a workmanlike and substantial manner," and contained an indemnification agreement requiring Serock to defend, indemnify, and hold Ledcor and Madison harmless from any and all claims, demands, losses, and liabilities arising from, resulting from, or connected with work performed under the subcontract. Serock testified that it last performed services in May 1998, without having worked on two of the buildings. The trial court concluded that Serock did not breach its contract on those two buildings.
¶ 4 All other subcontractors settled with Ledcor prior to trial. After a three-day bench trial, the trial court concluded that Serock had breached its contract on eleven of the thirteen buildings, but that the statute of limitations barred Ledcor's claims as to four of them. The court awarded Ledcor damages pursuant to the indemnification agreement for those four buildings, and damages for breach of contract for the other seven. The trial court awarded attorney fees to Ledcor under the indemnification agreement.

II
Statute of Limitations
¶ 5 Serock contends that all of Ledcor's claims for breach of contract were barred by the statute of limitations. Serock assigns error to the trial court's ruling that the six-year statute of limitations for written contracts began to run on the date of substantial completion of each building, rather than the date Serock performed the allegedly defective work, or, alternatively, when Serock ceased performing its subcontract. Ledcor argues that, although the statute of limitations for contracts is six years, the statute governing claim& arising from construction defects provides a different rule for construction cases. We agree with Serock and hold that Ledcor's claims for breach of contract are time-barred.
¶ 6 Whether the statute of limitations in a construction defect case begins to run on the date of substantial completion or upon *759 breach is a question of statutory construction, which we review de novo.[1]
¶ 7 Ledcor contends that RCW 4.16.310 allows a cause of action to accrue only after the latter of two eventssubstantial completion or termination of servicesregardless of when the alleged breach of contract occurred. RCW 4.16.310 provides that "[a]ny cause of action which has not accrued within six years after such substantial completion of construction, or within six years after such termination of services, whichever is later, shall be barred."
¶ 8 However, RCW 4.16.320 provides that "[n]othing in RCW 4.16.300 through 4.16.320 shall be construed as extending the period now permitted by law for bringing any kind of action." Because of the limitation set forth in RCW 4.16.320, RCW 4.16.310's command that "[a]ll claims or causes of action as set forth in RCW 4.16.300 shall accrue . . . within six years after substantial completion of construction, or during the period within six years after the termination of the services enumerated in RCW 4.16.300, whichever is later" serves only to impose an outside limit on when events giving rise to a cause of action may provide a basis for legal relief, not to define when a claim accrues for purposes of the statute of limitations. In other words, RCW 4.16.310 is a statute of repose. Claims covered by RCW 4.16.300 may still accrue prior to the beginning of the period of repose created by RCW 4.16.310.
¶ 9 The statute of limitations and the statute of repose applicable to breach of construction contract claims are distinct and have distinguishable effects on the viability of such claims. "In addressing whether a statute of limitations has run on an action arising out of construction or repair of an improvement on real property, both the relevant statute of limitations and the statute of repose set out in RCW 4.16.310 must be considered."[2] The applicable statute of limitations is the period following the accrual of a claim, during which the claim may provide a basis for recovery. In contrast, the statute of repose, RCW 4.16.310, simply provides thatnotwithstanding whether the applicable statute of limitations has runa claim brought more than six years after substantial completion or termination of services is barred.
[S]tatutes of repose are "of a different nature than statutes of limitation." Rice v. Dow Chem. Co., 124 Wash.2d 205, 211, 875 P.2d 1213 (1994). "A statute of limitation bars plaintiff from bringing an already accrued claim after a specific period of time. A statute of repose terminates a right of action after a specified time, even if the injury has not yet occurred." Id. at 211-12, 875 P.2d 1213.[[3]]
An action based upon a written contract, such as the one at issue here, must be filed within six years of its accrual to provide a basis for legal relief, RCW 4.16.040, regardless of when it expires for purposes of the statute of repose. In sum, RCW 4.16.310 is a pure statute of repose, is distinct from the applicable statute of limitations, and does not define when a breach of contract claim accrues for purposes of the statute of limitations.
¶ 10 When a breach of contract claim accrues prior to the beginning of the statute of repose, it may become time-barred before the statute of repose has run.[4] Here, Ledcor first pleaded breach of written contract claims against Serock in its November 30, 2004, amended complaint wherein Ledcor named Serock as a fourth party defendant. Serock stopped work on the project in May 1998. Thus, the statutory limitations period *760 for breach of contract claims by Ledcor against Serock expired no later than May 2004, six months prior to Ledcor naming Serock as a defendant. Accordingly, we hold that because the six-year limitation period in this case expired prior to the expiration of the period set forth in the statute of repose, Ledcor's breach of contract claims are time-barred.
¶ 11 Because RCW 4.16.310 does not lengthen the six-year limitation period, there are only two ways in which Ledcor's breach of contract claims against Serock, other than pursuant to the indemnity provision, might have been timely: first, if the statutory affirmative defense to the discovery rule, RCW 4.16.326(1)(g), alters when a breach of contract claim accrues and is applicable here or, second, if, notwithstanding RCW 4.16.326(1)(g), the discovery rule applied to Ledcor's claims. Neither possibility is viable.
¶ 12 The affirmative defense to the discovery rule in construction contract cases, RCW 4.16.326(1)(g), does not alter the applicable statute of limitations and, as such, cannot serve to redefine when Ledcor's breach of contract claims accrued. In Architechtonics Construction Management, Inc. v. Khorram,[5] this court held that the discovery rule applied to breach of contract claims covered by the statute of repose contained in RCW 4.16.310.[6] In response to Architechtonics, the legislature enacted Laws of 2003, ch. 80, § 1(g),[7] which provides that when the section is asserted as an affirmative defense, "[i]n contract actions the applicable contract statute of limitations expires, regardless of discovery, six years after substantial completion of construction, or during the period within six years after the termination of the services enumerated in RCW 4.16.300, whichever is later."[8]
¶ 13 Following the enactment of RCW 4.16.326(1)(g), our Supreme Court decided 1000 Virginia Limited Partnership v. Vertecs Corp.,[9] in which the court held that the discovery rule nonetheless applies to breach of construction contract actions where RCW 4.16.326(1)(g) is not pleaded and that RCW 4.16.326(1)(g) does not apply retroactively.[10] The court stated that:
Although the parties and amici debate whether RCW 4.16.326(1)(g) is a statute of limitations or a statute of repose, it appears to be neither. It does not alter the period of repose set out in RCW 4.16.310. Instead, it states that the "applicable contract statute of limitations expires, regardless of discovery," at the end of the same six year period set out in the statute of repose. RCW 4.16.326(1)(g). And, while the statute states an absolute end to the limitations period as an affirmative defense, it does not itself establish any limitations period. Instead, RCW 4.16.326(1)(g) simply identifies a point at which the "applicable" limitations period expires, without identifying what that limitations period is.[[11]]
The Supreme Court unambiguously construed RCW 4.16.326(1)(g) to leave the statute of limitations unchanged when a breach of contract claim accrues: "[RCW 4.16.326(1)(g)] does not clarify any ambiguity in any statute of limitations pertaining to construction contracts; i.e., it does not purport to change RCW 4.16.040(1) . . . which provide[s] the six-year limitations period for written contracts."[12] Thus, like RCW 4.16.310, RCW 4.16.326(1)(g) does not serve to lengthen the applicable statute of limitations by redefining the date on which a breach of contract claim accrues as being the date on which a construction project is substantially completed.
*761 ¶ 14 Notwithstanding whether RCW 4.16.326(1)(g) alters the statute of limitations, neither RCW 4.16.326(1)(g) nor the discovery rule applies to Ledcor's breach of contract claims against Serock. "[I]f the defendant fails to plead RCW 4.16.326(1)(g) as an affirmative defense, then the discovery rule of accrual can apply to delay accrual of a cause of action even on a written construction contract."[13] In this case, neither party pleaded RCW 4.16.326(1)(g). Moreover, Serock did not need to plead the statutory affirmative defense, nor could it have been expected to do so, because Ledcor never alleged that any of the claimed defects were latent.
¶ 15 Ledcor contends that it should be able to rely upon the discovery rule on appeal because it incorrectly, but justifiably, believed that the discovery rule was not available to it since RCW 4.16.326(1)(g) became effective prior to Ledcor filing claims against Serock.[14] According to Ledcor, this justifiable belief relieved it of any duty to plead latency. We are not persuaded that Ledcor's belief was justified. RCW 4.16.326 explicitly lists affirmative defenses only. A claim that an action is barred by the statute of limitations is an affirmative defense and, as such, the claim must be pleaded and proved by the party who asserts it.[15] Such a statutory affirmative defense has no effect unless pleaded.[16] To hold that Ledcor could rely upon the discovery rule in this case effectively would be to allow Ledcor to eliminate RCW 4.16.326(1)(g) as one of Serock's available affirmative defenses by failing to properly allege latent defects in its initial pleadings.
¶ 16 Because the discovery rule does not apply to this case and RCW 4.16.326(1)(g) does not alter when any claim accrues, Ledcor's breach of contract claims against Serock were barred by ROW 4.16.040's six-year limitation period. RCW 4.16.040(1) provides that "[a]n action upon a contract in writing, or liability express or implied arising out of a written agreement" must be commenced within six years of its accrual.
¶ 17 In sum, neither RCW 4.16.310 nor RCW 4.16.326(1)(g) serve to extend the statute of limitations beyond the applicable six-year limitation period provided by RCW 4.16.040. The discovery rule does not apply. The limitation period provided by ROW 4.16.040 expired six months prior to Ledcor naming Serock as a defendant. Ledcor's claims were time-barred because they were made more than six years after the alleged breach of contract. Accordingly, we reverse the judgment for breach of contract against Serock.
Indemnity
¶ 18 Serock argues that the amount of damages the trial court awarded for breach of contract and indemnity was excessive because it included the costs of repairing work that Serock did not do. Whether the amount of a damages award is reasonable is a question of fact, which we review for abuse of discretion.[17] An abuse of discretion occurs when a decision is manifestly unreasonable, exercised on untenable grounds, or based on untenable reasons.[18]
¶ 19 Because we hold that the contract claims are time-barred, we need only review *762 the indemnity award. However, we must first look to the trial court's reasoning in calculating contract damages because the trial court used the same formula as the basis for the indemnity award.
¶ 20 The trial court found that the total cost to repair and replace defects within Serock's scope of work was $255,000. Serock contends that this exceeded Serock's scope of work because it included the cost of repairing work done by other subcontractors. However, substantial evidence supports the trial court's finding that, in the course of repairing Serock's defective work, the work of other subtrades had to be destroyed and replaced. Therefore, it was not unreasonable for the trial court to include in the damages award the cost of replacing work done by subcontractors other than Serock.
¶ 21 In calculating breach of contract damages, the trial court reduced the repair cost by 50 percent, because the award was for repair of seven of thirteen buildings, arriving at $127,500.[19] The trial court applied an additional 25 percent reduction to account for its finding that the metal flashing component was not within Serock's scope of work, for a final breach of contract award of $95,625. Using roughly the same formula, the court awarded $57,375 in additional damages under the indemnification agreement: for repairs on the four buildings for which it held that the statute of limitations for breach of contract had expired.[20] The trial court did not abuse its discretion when it calculated damages using this formula.
¶ 22 We affirm the trial court's award of damages under the indemnification agreement between the parties for four buildings. We also note that, although Ledcor cannot recover under a breach of contract theory, nothing in this opinion precludes the trial court from considering whether Ledcor is entitled to indemnification for repairing the seven other buildings, for which the trial court erroneously awarded damages under a breach of contract theory.
Offset
¶ 23 Serock submits that the trial court erred when it refused to apply an offset to the damages awarded to Ledcor. The purpose of an offset under the circumstances of this case would be to prevent double recovery.[21] Serock argues that the damages awarded to Ledcor include the work of other subtrades with whom Ledcor settled prior to trial. However, substantial evidence supports the trial court's finding that the damages awarded to Ledcor were caused by Serock's defective work, and no evidence was presented showing that Ledcor previously recovered for repairing the same work. We affirm the trial court's denial of an offset.
Discovery Sanctions
¶ 24 Serock assigns error to the trial court's denial of its request to sanction Ledcor by precluding its breach of contract claims. Serock argues that Ledcor violated Court Rule (CR) 26 by filing an evasive, misleading, and incomplete discovery response. Serock contends that it did not know that Ledcor was making claims against it for its work on the window trim until Ledcor filed its summary judgment motion on October 17, 2005.
¶ 25 A trial court's determination regarding whether to impose discovery sanctions under CR 26 is reviewed for abuse of discretion.[22]
¶ 26 In its interrogatories, Serock asked Ledcor to describe the nature and extent to which its work was allegedly inconsistent with industry standards, identify all persons with knowledge about such inconsistencies, and identify all documents discussing or relating to such inconsistencies. Ledcor responded *763 by incorporating by reference four experts' reports: (1) the Interface Management Building Report, (2) the Neutral Panel Building Report, (3) the Olympic Associates Scope of Repair Summary Report, and (4) the Olympic Repair Allocation Chart. Serock submits that only one of the documents, a chart prepared by John Hart which allocates a specific portion of damages to Serock, was actually responsive to Serock's discovery request. However, only the Neutral Panel Building Report was admitted as a trial exhibit.
¶ 27 Serock did not move to require greater specificity in Ledcor's discovery response. Although the Neutral Panel Building Report does not specifically allocate responsibility for defects among subcontractors, it contains descriptions of construction defects throughout the project, including defects in the window trim. Serock's scope of work included the window trim, and Serock performed work on the window trim of at least eleven buildings. In addition, Ledcor's motion to amend its pleadings to add Serock as a defendant specifies, "expert reports have indicated that the window trim installation is defective and caused damage . . . and in this instance, some of the window trim apparently was not installed by the siding subcontractors but by Serock Construction."
¶ 28 The trial court did not abuse its discretion by denying Serock's request to preclude Ledcor's breach of contract claims regarding window trim.
Waiver
¶ 29 Serock contends that Ledcor waived its claims relating to Serock's installation of the vertical wood trim, because Edward Serock testified at trial that someone on site whom. Serock believed worked for Ledcor directed him to change the manner in which he was installing the wood trim, and that change eliminated caulking. Further, Ledcor routinely inspected Serock's work on the site, and only approved its invoices for payment if the work passed inspection. Serock contends that because this evidence was uncontroverted, it was error for the trial court not to rule that Ledcor waived its claims relating to the vertical wood trim. Waiver is the intentional abandonment or relinquishment of a known right, and intent to waive must be shown by unequivocal acts or conduct which are inconsistent with any intention other than to waive.[23] Whether a waiver has occurred is a question of fact, unless reasonable minds could reach but one conclusion.[24]
¶ 30 Ledcor's expert, John Putnam, testified at trial that the wood trim was not constructed in a workmanlike manner, caulk was not applied to the vertical wood trim in most instances, and the ends of trim wood were not reprimed after cutting to size. The subcontract required changes to the scope of work to be made by a written change order signed by Ledcor and Serock. Corporate counsel for Ledcor testified that Ledcor follows a policy of documenting any changes that affect the building envelope in a written change report. No such written change report was produced. The subcontract provides that payment to the subcontractor does not constitute or imply acceptance of any portion of the work.
¶ 31 We affirm the trial court's ruling that Ledcor did not waive claims relating to the window trim.
Laches
¶ 32 Serock assigns error to the trial court's ruling denying its motion to dismiss on grounds of laches. The equitable doctrine of laches may be used to bar an action when (1) the plaintiff knew the facts constituting a cause of action, (2) the plaintiff unreasonably delayed commencing an action, and (3) the defendant was materially prejudiced by the delay in bringing the action.[25] However, laches is an extraordinary remedy that should not, under ordinary circumstances, *764 be employed to bar an action short of the applicable statute of limitations.[26]
¶ 33 Serock contends that Ledcor unreasonably delayed suing Serock because, although Ledcor knew of the facts constituting this action when it entered its appearance in May 2002, it did not sue Serock until November 2004. Serock cites one case in support of its laches argument, Davidson v. State.[27] In that case, a claim was barred by laches after it had been delayed for 62 years.[28] We agree with Serock that Ledcor possessed knowledge of the necessary facts in May 2002. However, reasonable minds could differ as to whether an 18-month delay is an "unreasonable" delay for the purpose of laches.
¶ 34 Serock argues that it was prejudiced because it did not have an opportunity to defend its work or to hire an expert to inspect its work, but provides no facts showing actual prejudice. Serock was provided with several expert reports, including a report by a neutral panel of experts. The trial court was in the best position to weigh the evidence and determine whether the delay was unreasonable and, if so, whether that delay caused sufficient prejudice to Serock to justify dismissal based on laches. Substantial evidence supports finding that the delay was not unreasonable and that Serock was not prejudiced.
¶ 35 We affirm the trial court's denial of Serock's laches defense.
Attorney Fees
¶ 36 Serock contends that the trial court erred by awarding attorney fees incurred by Ledcor from May 1, 2002 to October 31, 2004. First, Serock argues it had no duty to defend Ledcor under the indemnity agreement because Ledcor's tender of defense was untimely. Second, Serock argues that it is not liable for any fees or costs incurred prior to the date Ledcor tendered its defense to Serock. Finally, Serock argues that recovery of attorney fees under the indemnity addendum is limited to fees arising from Serock's defective work, and the trial court erred by awarding Ledcor a portion of its fees without determining whether those fees arose from Serock's work. Whether a party is entitled to attorney fees is an issue of law, which we review de novo.[29] We review whether the amount of a fee award is reasonable for abuse of discretion.[30]
¶ 37 Serock contends that it had no duty to defend Ledcor, because Ledcor did not tender its defense to Serock until after it had settled with Madison, but cites no pertinent authority for this argument. Likewise, Serock cites no authority for its argument that it is not liable for defending Ledcor prior to Ledcor's tender of defense. We affirm the trial court's ruling that Serock is liable for pre-tender defense costs and fees.
¶ 38 Serock contends that the award is excessive because it includes fees relating to Ledcor's defense of the work of other subcontractors. We hold that the trial court's attorney fee award is arbitrary.
¶ 39 The trial court determined that Ledcor incurred a total of $339,943 in reasonable attorney fees and costs from May 1, 2002 through October 30, 2004. The trial court then divided that number by 13, the number of subcontractors involved in this litigation, and awarded Ledcor $26,149.51 against Serock as a pro rata share of the fees and costs incurred prior to October 30, 2004. The trial court did not make findings to support its method for calculating Serock's share of attorney fees for this period. Ledcor does not claim that it was impossible to segregate those fees attributable to Serock's work. Ledcor simply claims "[m]ost of the defense legal services related to the work of multiple subcontractors." However, there is no reason why Ledcor could not segregate the fees which wholly or partially relate to Serock's work and assign Serock its actual fair share *765 of fees. Further, the trial court's method of determining attorney fees is not supported by findings of fact. We reverse the trial court's award of attorney fees incurred during the period of May 1, 2002 through October 30, 2004.
¶ 40 Both parties request fees and costs on appeal under RAP 18.1. Because there is no substantially prevailing party on appeal, we decline to award attorney fees.
¶ 41 REVERSED in part and AFFIRMED in part.
WE CONCUR: DWYER and COX, JJ.
NOTES
[1] Ballard Square Condo. Owners Ass'n v. Dynasty Const. Co., 158 Wash.2d 603, 612, 146 P.3d 914 (2006) (citing State v. Roggenkamp, 153 Wash.2d 614, 621, 106 P.3d 196 (2005)).
[2] 1000 Virginia Ltd. P'ship v. Vertecs Corp., 158 Wash.2d 566, 574, 146 P.3d 423 (2006) (emphasis added) (footnote omitted).
[3] 1000 Virginia, 158 Wash.2d at 574-75, 146 P.3d 423.
[4] See 16 DAVID K. DeWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE TORT LAW AND PRACTICE § 9.13, at 289 (3d ed.2006) ("a claim that accrues before substantial completion of the improvement starts the running of the statute of limitations," citing Phillips v. King County, 87 Wash.App. 468, 943 P.2d 306 (1997), aff'd, 136 Wash.2d 946, 968 P.2d 871 (1998); Pepper v. J.J. Welcome Constr. Co., 73 Wash.App. 523, 871 P.2d 601 (1994)).
[5] 111 Wash.App. 725, 45 P.3d 1142 (2002).
[6] Architechtonics Construction Management, 111 Wash.App. at 737, 45 P.3d 1142.
[7] Codified at RCW 4.16.326(1)(g).
[8] RCW 4.16.326(1)(g).
[9] 158 Wash.2d 566, 146 P.3d 423 (2006).
[10] See 1000 Virginia, 158 Wash.2d at 578-79, 587, 146 P.3d 423.
[11] 1000 Virginia, 158 Wash.2d at 583-84, 146 P.3d 423 (emphasis added).
[12] 1000 Virginia, 158 Wash.2d at 585, 146 P.3d 423.
[13] 1000 Virginia, 158 Wash.2d at 582, 146 P.3d 423.
[14] Serock moves to strike Ledcor's reply brief on the grounds that the brief does not reply to its response to Ledcor's cross-appeal, but rather to Serock's reply brief. A respondent who is also seeking review may file a brief in reply to the response the appellant has made to the issues presented by respondent's request for review. RAP 10.1(c). Ledcor conditionally sought review of whether the date of substantial completion should have been calculated on a phase-by-phase or project-as-a-whole basis, rather than a building-by-building basis. However, Ledcor's reply brief discusses whether substantial completion is the date at which the statute of limitations begins to run and whether the discovery rule applies in this case. Because neither issue was raised in the cross-appeal, Serock's motion to strike Ledcor's reply brief is granted.
[15] CR 8(c).
[16] CR 8(c).
[17] Bunch v. King County Dep't of Youth Serv., 155 Wash.2d 165, 175, 116 P.3d 381 (2005).
[18] Mayer v. Sto Indus., Inc., 156 Wash.2d 677, 684, 132 P.3d 115 (2006) (quoting Assoc. Mort. Investors v. G.P. Kent Constr. Co., 15 Wash.App. 223, 229, 548 P.2d 558 (1976)).
[19] Although Serock worked on more than half of the buildings, the court applied a 50 percent reduction to account for differences in the sizes of some of the buildings, "giving the benefit of that doubt to the defense,"
[20] The court calculated that four of thirteen buildings comprised approximately 30 percent of the buildings, and therefore the, award was 30 percent of $255,000 reduced by 25 percent to account for the metal flashing.
[21] Eagle Point Condo, Owners Ass'n v. Coy, 102 Wash.App. 697, 702, 9 P.3d 898 (2000).
[22] Mayer, 156 Wash.2d at 684, 132 P.3d 115.
[23] Mid-Town Ltd. P'ship v. Preston, 69 Wash. App. 227, 233, 848 P.2d 1268 (1993).
[24] Michel v. Melgren, 70 Wash.App. 373, 379, 853 P.2d 940 (1993).
[25] Davidson v. State, 116 Wash.2d 13, 25, 802 P.2d 1374 (1991).
[26] Brost v. L.A.N.D., Inc., 37 Wash.App. 372, 375, 680 P.2d 453 (1984).
[27] 116 Wash.2d 13, 802 P.2d 1374 (1991).
[28] Davidson, 116 Wash.2d at 26-27, 802 P.2d 1374.
[29] Taliesen Corp. v. Razore Land Co., 135 Wash. App. 106, 141, 144 P.3d 1185 (2006).
[30] Taliesen, 135 Wash.App. at 141, 144 P.3d 1185.