FILED
COURT OF APPEALS
DIVISION II

2014 DEC 30 AM 9: 44

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DANIA, INC., a Delaware corporation; NORTHWEST WA PROPERTIES, LLC, a Delaware limited liability company, | No. 45035-6-II |
| Appellant. | |
| v. | |
| SKANSKA USA BUILDING INC., a Delaware corporation; McDONALD & WETLE ROOFING, INC., a Washington corporation, | PUBLISHED OPINION |
| Respondents. | |

LEE, J. — Dania, Inc. appeals the trial court's summary dismissal of its construction defect action against Skanska USA Building, Inc. Dania argues that the trial court erred in concluding that the statute of repose, RCW 4.16.310, barred its action. Because there is a question of fact as to whether Dania filed its complaint before the applicable limitations period expired, we hold that the trial court erred in ruling as a matter of law that the statute of repose barred Dania's complaint. Accordingly, we reverse the summary judgment order dismissing Dania's complaint against Skanska and remand for further proceedings.

## FACTS

On March 17, 2005, Dania entered into a contract with Skanska, as general contractor, for the construction of a distribution warehouse in the city of Dupont, Washington (the City). Skanska entered into a subcontract with McDonald & Wetle, Inc. (M&W) for all required labor, material,

equipment, supervision and coordination necessary to construct a complete roof system on the warehouse.

On December 21, 2005, the City issued a temporary certificate of occupancy that permitted Dania to occupy part of the warehouse. On the same date, M&W issued a two-year warranty certifying that the roof was watertight.

In January 2006, Dania received permission from the City to use the full square footage of the warehouse. Work continued on the warehouse, however, and a punch list issued on February 14, 2006, showed that several items of work remained, including the addition of a final layer of the roofing membrane known as the "mineral cap sheet." Clerk's Papers (CP) at 143-44, 183. The mineral cap sheet contains ceramic granules for ultraviolet (UV) protection and weatherability, and its installation was part of M&W's contract with Skanska.

M&W completed the mineral cap sheet installation on the roof on June 21, 2006. In November 2006, Dania noticed leaks in the lobby area of the warehouse and elsewhere. M&W made initial repairs, but Dania eventually hired an outside contractor in 2010 to repair the roof.

Dania filed suit against Skanska and M&W for breach of contract and negligence on April 4, 2012. Dania alleged that the roof was leaking because roofing materials, including the mineral cap sheet, were not properly installed, and it claimed damages of almost $400,000.

Skanska responded by moving for summary judgment under the construction statute of repose, RCW 4.16.310, which bars any action for construction defects that fail to accrue within six years of substantial completion of construction or termination of services, whichever is later. Skanska argued that Dania's complaint was untimely because it was filed more than six years after January 2006, the project's substantial completion date. Skanska also argued that the June 2006

roof work did not postpone the running of the statute of repose because that work was unrelated to Dania's complaint.

Dania successfully moved to delay consideration of the summary judgment motion so that it could conduct discovery into Skanska's contentions. Dania deposed Todd Barnes, Skanska's project manager for the warehouse construction, and asked him about the mineral cap sheet work performed in June 2006:

> Q:  Now, you said that a cap sheet was installed on the roof in the summer of 2006. Can you tell me, what is a cap sheet?
> A:  It's the final layer of the roofing membrane.
> Q:  What makes it different than any other layer of the roofing membrane?
> A:  I couldn't tell you the technical qualities, but it's got ceramic granules, and those are mainly there for UV protection.
> Q:  Without the cap sheet layer, was the roof still watertight?
> A:  Correct, yes.
> Q:  And do you know what contractor installed that cap sheet?
> A:  McDonald & Wetle.

CP at 182.

During the summary judgment hearing that followed, Skanska contended that the above exchange from the Barnes deposition showed that the June 2006 cap work was unrelated to Dania's cause of action and that the statute of repose began to run from the date of the warehouse's substantial completion in January 2006. Skanska maintained that the statute of repose could not start running when the mineral cap sheet was installed in June 2006 because the June work had nothing to do with the leaks.

Dania replied that there was not yet any testimony about the cause of the leaking. RP 12. When the court reasoned that it was possible that application of the mineral cap sheet caused the leaking and asked whether there was any evidence in the record to create this issue of fact, Dania

responded that an issue of fact existed without additional evidence. The court then suggested that it was Dania's burden, as the nonmoving party, to respond with some evidence that the mineral cap sheet caused the leaks. The court eventually agreed with Skanska that the lack of such evidence showed that the statute of repose started to run from the date of substantial completion and that Dania's action was time barred. Dania appeals the order granting summary judgment and dismissing Dania's claim against Skanska.

## ANALYSIS

### A. STANDARD OF REVIEW

A moving defendant meets its initial burden on summary judgment by showing that there is an absence of evidence to support the plaintiff's case. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989). The inquiry then shifts to the plaintiff to set forth specific facts demonstrating a genuine issue for trial. *Young*, 112 Wn.2d at 225. An order granting summary judgment should be affirmed if no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact is one on which the outcome of the litigation depends. *Greater Harbor 2000 v. City of Seattle*, 132 Wn.2d 267, 279, 937 P.2d 1082 (1997). We review a summary judgment order de novo and consider the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Schaaf v. Highfield*, 127 Wn.2d 17, 21, 896 P.2d 665 (1995).

### B. APPLICABLE LIMITATIONS PERIOD

Skanska moved for summary judgment on the basis that Dania's action was barred by the statute of repose, RCW 4.16.310. Dania responded by arguing that the statute of repose was satisfied if the statute of limitations started running during the six years following Skanska's

termination of services. Dania contended that its claims accrued in November 2006, when it discovered that the roof was leaking, and that its April 2012 complaint was timely.

Skanska replied that Dania was improperly arguing that its filing deadline had been extended by the discovery rule. Skanska asserted that under the statute of limitations for construction contract claims codified in RCW 4.16.326(1)(g), any defect claims arising out of a construction project must be filed within six years of substantial completion or termination of services and that the date of discovery was immaterial. Skanska argued further that the statute of repose in RCW 4.16.310 was the governing law and that the only relevant determination was the date on which the statute of repose commenced. During the hearing, Dania did not challenge Skanska's argument that the discovery rule no longer applied and that under RCW 4.16.326(1)(g), a construction defect claim must both accrue and be filed within six years of substantial completion or termination of services, whichever is later. In its motion for reconsideration, Dania cited RCW 4.16.326(1)(g) as the "combined statute of limitations/statute of repose the legislature came up with to deal with construction contracts." CP at 239.

In explaining the law that guides our analysis, we address the statute of repose, the statute of limitations, and RCW 4.16.326(1)(g).

1. Statute of Repose – RCW 4.16.310

A statute of repose terminates a potential claim after a specified time, even if an injury has not yet occurred. *Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Constr. Co.*, 176 Wn.2d 502, 511, 296 P.3d 821 (2013). RCW 4.16.310 bars an action for construction defects that does not accrue six years from the time of substantial completion of construction or termination of services, whichever is later. *Cambridge Townhomes,*

*LLC v. Pac. Star Roofing, Inc.*, 166 Wn.2d 475, 485, 209 P.3d 863 (2009). The statute provides as follows:

> All claims or causes of action as set forth in RCW 4.16.300 shall accrue, and the applicable statute of limitation shall begin to run only during the period within six years after substantial completion of construction, or during the period within six years after the termination of the services enumerated in RCW 4.16.300[1], whichever is later. The phrase "substantial completion of construction" shall mean the state of completion reached when an improvement upon real property may be used or occupied for its intended use. Any cause of action which has not accrued within six years after such substantial completion of construction, or within six years after such termination of services, whichever is later, shall be barred.

RCW 4.16.310; *see also Donovan v. Pruitt*, 36 Wn. App. 324, 327, 674 P.2d 204 (1983) (describing RCW 4.16.310 as a statute of abrogation).

Under RCW 4.16.310, a claim set forth in RCW 4.16.300 must accrue within the six years following substantial completion of construction or termination of services, whichever is later. *Hunt, Huber*, 176 Wn.2d at 511. Once the claim has accrued, "that is the end of the statute of repose inquiry. Whether an accrued claim is timely filed is a different question, involving the statute of limitation, not the statute of repose." *Hunt, Huber*, 176 Wn.2d at 511.

2. Statute of Limitations – RCW 4.16.040(1)

Under the statute of limitations in former RCW 4.16.040(1) (2007), an action upon a written contract must be commenced within six years. A statute of limitations generally runs from the time a claim accrues, which is when a party has the right to apply to a court for relief.

---

[1] RCW 4.16.300 applies to all claims or causes of action against any person "arising from" such person having constructed, altered or repaired any improvement upon real property. *Condit v. Lewis Refrigeration Co.*, 101 Wn.2d 106, 110, 676 P.2d 466 (1984). RCW 4.16.300 also applies to claims against persons who supervise construction or administer construction contracts; it "focuses on individuals whose activities relate to construction of the improvement." *Condit*, 101 Wn.2d at 110.

*Cambridge Townhomes*, 166 Wn.2d at 485. Thus, unlike a statute of repose, which bars a right of action after a specified time even if injury has not occurred, a statute of limitations bars the accrued claim after a specific period of time. *Harmony at Madrona Park Owners Ass'n v. Madison Harmony Dev. Inc.*, 143 Wn. App. 345, 353, 177 P.3d 755 (quoting *Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 211, 875 P.2d 1213 (1994)), *review denied*, 164 Wn.2d 1032 (2008).

Actions often accrue, for purposes of applying a statute of limitations, when the wrongful act occurs. *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 575, 146 P.3d 423 (2006). However, courts sometimes apply a discovery rule of accrual where the cause of action accrues when the plaintiff discovers, or should discover, the elements of the cause of action. *1000 Va.*, 158 Wn.2d at 575-76.

In 2002, Division One of this court held that the discovery rule applied to breach of construction contract claims. *Architectonics Constr. Mgmt., Inc. v. Khorram*, 111 Wn. App. 725, 737, 45 P.3d 1142 (2002), *abrogated by 1000 Va.*, 158 Wn.2d 566 (2006). As a result, persons who constructed, altered or repaired any improvement upon real property could be potentially liable for services provided up to 12 years after substantial completion or termination of services– 6 years for the claim or cause of action to accrue and 6 years after accrual before the statute of limitations terminates the right of action.

3. Legislative Response – RCW 4.16.326(1)(g)

In 2003, the legislature enacted RCW 4.16.326, which included an affirmative defense that precluded application of a discovery rule in construction contract cases. RCW 4.16.326(1)(g); *Harmony*, 143 Wn. App. at 354. RCW 4.16.326 provides as follows:

(1) Persons engaged in any activity defined in RCW 4.16.300 may be excused, in whole or in part, from any obligation, damage, loss, or liability for those defined activities under the principles of comparative fault for the following affirmative defenses:

. . . .

(g) To the extent that a cause of action does not accrue within the statute of repose pursuant to RCW 4.16.310 or that an actionable cause as set forth in RCW 4.16.300 is not filed within the applicable statute of limitations. In contract actions the applicable contract statute of limitations expires, regardless of discovery, six years after substantial completion of construction, or during the period within six years after the termination of the services enumerated in RCW 4.16.300, whichever is later.

RCW 4.16.326(1)(g).

This legislation was intended to reduce a builder's potential exposure to liability from 12 to 6 years, thus creating greater certainty for insurers. *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 127 Wn. App. 899, 912 n.29, 112 P.3d 1276 (2005), *aff'd*, 158 Wn.2d 566, 146 P.3d 423 (2006). The affirmative defense in RCW 4.16.326(1)(g) terminates any construction contract claim six years after substantial completion or termination of services listed in RCW 4.16.300, whichever is later.[2] *1000 Va.*, 158 Wn.2d at 582. Thus, following the enactment of RCW 4.16.326(1)(g), any claim for breach of written construction contracts must both accrue and be filed within six years of substantial completion or termination of services, whichever is later. *Huber, Hunt*, 176 Wn.2d at 515; *Cambridge Townhomes*, 166 Wn.2d at 485.

RCW 4.16.326(1)(g) is neither a statute of repose nor a statute of limitations. *1000 Va.*, 158 Wn.2d at 583. It does not alter the statute of repose in RCW 4.16.310. Rather, it explains that

---

[2] If a defendant fails to plead RCW 4.16.326(1)(g) as an affirmative defense, the discovery rule can apply to delay accrual of a cause of action even on a written construction contract. *1000 Va.*, 158 Wn.2d at 582. Moreover, the discovery rule may still apply to oral contracts, which have a three-year statute of limitations. RCW 4.16.080(3); *1000 Va.*, 158 Wn.2d at 582.

the limitations period expires, regardless of discovery, at the end of the same six-year period in RCW 4.16.310. *1000 Va.*, 158 Wn.2d at 583-84. RCW 4.16.326(1)(g) identifies the point at which the applicable limitations period expires and establishes an absolute end to the limitations period as an affirmative defense. *1000 Va.*, 158 Wn.2d at 584.

On appeal, the parties focus on when Dania's breach of contract action accrued under RCW 4.16.310 and whether Dania brought its action before the statute of repose ran. Dania argues that the relevant date is June 2006, when Skanska terminated its services after installing the mineral cap on the roof; therefore, because the complaint was filed in April 2012, the claim is not barred by the statute of repose. Skanska, on the other hand, argues that Dania's claim is barred by the statute of repose because the relevant date is January 2006, the date of substantial completion, not June 2006 because the mineral cap installation on the roof was not related to Dania's complaint.

While the parties focus on whether Dania's claim is barred under the statute of repose (RCW 4.16.310), the relevant inquiry is whether Dania filed its action within the time limitation set forth in RCW 4.16.326(1)(g).[3] As discussed above, a claim is barred under the statute of repose if it does not accrue within six years of substantial completion or termination of services. Here, it is undisputed that Dania's claim accrued in November 2006, when the roof started leaking, which is well within the statute of repose limitation. Thus, the issue is not whether the claim is barred by

---

[3] Skanska's arguments on the applicability of RCW 4.16.326(1)(g) to the trial court satisfy our liberal pleading rules. CR 15.

the statute of repose, but whether Dania filed its cause of action within six years of substantial completion or termination of contract, whichever is later, as required by RCW 4.16.326(1)(g).[4]

C.     SUBSTANTIAL COMPLETION

Under RCW 4.16.310, a construction project is substantially complete if it can be used or occupied for its intended use. Substantial completion occurs when the entire improvement, and not just a component part, may be used for its intended purpose. *Mattingly v. Palmer Ridge Homes LLC*, 157 Wn. App. 376, 394, 238 P.3d 505 (2010); *Smith v. Showalter*, 47 Wn. App. 245, 251, 734 P.2d 928 (1987). The fact that additional contract work remains, including punch list work, does not affect the conclusion that a project is substantially complete if it is otherwise fit for occupancy. *1519-1525 Lakeview Blvd. Condo. Ass'n v. Apt. Sales Corp.*, 101 Wn. App. 923, 932, 6 P.3d 74 (2000), *aff'd*, 144 Wn.2d 570, 29 P.3d 1249 (2001).

Dania conceded during oral argument that construction of the warehouse was substantially complete when the entire warehouse was ready for use in January 2006. Skanska's project completion report, written in June 2006, stated that the building's opening was on January 1, 2006. Barnes, the project manager, stated in his deposition that Dania was allowed to occupy the whole warehouse by the second or third week of January 2006. Dania's response to Skanska's summary judgment motion stated that Dania received permission to occupy the entire warehouse in January 2006. And, in its motion for reconsideration, Dania acknowledged that full use of the warehouse began in January 2006. Therefore, if the later date of June 2006 (the date Dania argues Skanska

---

[4] RCW 4.16.326(1)(g) does not appear to apply to Dania's negligence claim, which is governed by a three-year statute of limitations. RCW 4.16.080; *see Huber, Hunt*, 176 Wn.2d at 515 (RCW 4.16.326(1)(g) applies to claim for breach of written construction contact).

installed the mineral cap on the roof and terminated its services) does not apply, then Dania's April 2012 complaint was filed after the limitations period had expired.

D.    TERMINATION OF SERVICES

Dania argues that the controlling date is June 2006, the termination of services date. Dania conceded during oral argument that termination of services occurred with the roof's completion in June 2006.

For contractors who perform final services on a project, the limitations period begins to run from the date their last service was provided, so long as that service gave rise to the cause of action. *Parkridge Assocs., Ltd.. v. Ledcor Indus., Inc.*, 113 Wn. App. 592, 599-600, 54 P.3d 225 (2002). The language of RCW 4.16.300 describing actions or claims "arising from" various services shows that there must be a nexus between the services performed after the date of substantial completion and the cause of action in order for the termination of services date to extend the limitations period. *Parkridge*, 113 Wn. App. at 599-600. This requirement protects those who perform other earlier services from remaining exposed to liability until all services are completed by all contractors. *See 1519-1525 Lakeview Blvd.*, 144 Wn.2d at 577.

Skanska argues that the nexus requirement is satisfied only with evidence of a causal link between the final services and the cause of action. Therefore, Dania was required to supply evidence showing that installation of the mineral cap on the roof caused the leaking. Skanska contends that dismissal was appropriate because Dania did not respond to the summary judgment motion with any such evidence.

Dania argues that the nexus requirement is satisfied if there is some kind of connection between the final services and the cause of action. Dania also argues that the needed connection

11

here is shown by the fact that Skanska's final service was to the roof, which was the basis of the cause of action. Dania maintains that there is an issue of fact concerning the nexus requirement without the evidence of causation that Skanska would require, and it cites language from *Parkridge* as support.

In *Parkridge*, the general contractor on a construction project (Ledcor) sued a subcontractor (Freeman) for allegedly defective work. 113 Wn. App. at 595-96. Freeman moved for summary judgment, arguing that Ledcor's claims were barred by the construction statute of repose. *Parkridge*, 113 Wn. App. at 597. The trial court agreed and dismissed Ledcor's breach of subcontract claim. *Parkridge*, 113 Wn. App. at 597.

On appeal, Ledcor argued that Freeman's later work qualified as "services" under RCW 4.16.300, while Freeman argued that there had to be a nexus between those services and the cause of action. *Parkridge*, 113 Wn. App. at 599. Division One agreed with them both. *Parkridge*, 113 Wn. App. at 599. Without elaborating on the type of work performed, the court observed that Freeman's work following the date of substantial completion was "arguably work from which Ledcor's cause of action arose." *Parkridge*, 113 Wn. App. at 599-600. The court added that, in any event, Freeman had failed to show the absence of a genuine issue of material fact on the nexus issue:

> Freeman claims that the work performed after the date of substantial completion was "warranty repairs" or "punch list" work that had no nexus to the contract and initial construction work on which the lawsuit is based. Nothing in the record supports this bare assertion. But even if Freeman had provided evidence to support this argument, there would be, at most, a genuine issue of material fact on the question. Summary judgment would not have been proper. Accordingly, the date of termination of services, December 5, 1994, controls, not the December 30, 1993 date of substantial completion of the project.

*Parkridge*, 113 Wn. App. at 600.

Thus, the *Parkridge* court held that because the moving party failed to provide evidence showing that its final services had nothing to do with the contract and the initial construction work on which the lawsuit was based, summary judgment was improper. The court also held that even if the moving party had provided such evidence, an issue of material fact on the nexus question would remain.

We question this reasoning, as it would prohibit a contractor from ever obtaining summary judgment on the nexus issue. We agree, however, with the more fundamental point in *Parkridge* that there must be some nexus between the construction work and the cause of action for the termination of services date to apply. RCW 4.16.300 provides that an action must "aris[e] from" a service and thereby requires a connection between the action and the service. Without that connection, a contractor's liability could be extended by any subsequent work on a construction project. *See 1519-1525 Lakeview Blvd.*, 101 Wn. App. at 929-30 (rejecting argument that termination of services would not occur until the termination of all services by all providers).

Here, the required connection is arguably satisfied by the location and timing of the June roof work and the November leaking. *See Parkridge*, 113 Wn. App. at 600 (summary judgment was inappropriate because the subcontractor's final services were arguably work from which the cause of action arose). The record shows that the roof was installed, except for the final layer, by the end of 2005 and that it was watertight at that point. The record then shows that the final layer was installed in June 2006 and that the leaks began the following November. Skanska insists that its final services had nothing to do with the subsequent leaking because the project manager stated that the roof was watertight without the final cap. But the fact that the roof was watertight in

13

January does not show, in and of itself, that the subsequent cap installation did not affect the roof's ability to withstand moisture.

We reject Skanska's argument that additional evidence of a causal link was required to withstand summary judgment. During oral argument, Skanska reasoned that even if a Dania expert had opined that installation of the final roof layer caused the leak, Skanska would have needed to conduct additional depositions to determine the basis for that opinion. The result would be a mini-trial on causation that would essentially require Dania to prove an element of its case in response to a summary judgment motion based on the statute of repose. *See Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995) (elements of breach of contract claim include duty, breach, causation, and damages). We decline to interpret the nexus requirement to impose the burden Skanska seeks to impose on Dania.

When viewed in the light most favorable to Dania, the nonmoving party, the evidence raises a genuine issue of material fact as to whether a connection exists between Skanska's final work on the roof in June 2006 and the leaking that followed in November 2006. Because genuine issues of fact remain concerning that connection, the trial court erred in dismissing Dania's complaint against Skanska. Therefore, we reverse the order dismissing Dania's complaint on summary judgment and remand for further proceedings.

_____
Lee, J

I concur:

_____
Worswick, P.J.

14

MAXA, J. (concurring in result) — I agree with the majority opinion that the trial court's grant of summary judgment in favor of Skanska USA Building, Inc. must be reversed. But I write separately because I believe that under RCW 4.16.326(1)(g), the statute of limitations begins to run at termination of the defendant's construction services rather than at substantial completion *even if those services do not relate to the plaintiff's claim*. Because there is no question that Skanska's subcontractor engaged in construction services in June 2006 and Dania, Inc. filed its lawsuit within six years after termination of those services, I would hold as a matter of law that the statute of limitations cannot bar Dania's lawsuit.

RCW 4.16.326(1)(g) states that the applicable construction contract statute of limitations expires "six years after substantial completion of construction, or during the period within six years after the termination of the services enumerated in RCW 4.16.300, whichever is later." The parties do not dispute that (1) substantial completion of Dania's warehouse occurred by January 2006, (2) after substantial completion Skanska's subcontractor performed additional construction services – installation of a final layer of the roofing membrane, (3) the subcontractor did not complete the membrane installation on the roof until June 2006, and (4) Dania filed suit against Skanska and the subcontractor for breach of contract in April 2012. Therefore, Dania's claim is barred if the statute of limitations started running at substantial completion, but it is not barred if the statute of limitations started running when Skanska's subcontractor terminated its services in June 2006.

The majority opinion states "[f]or contractors who perform final services on a project, the limitations period begins to run from the date their last service was provided, *so long as that service gave rise to the cause of action*." Majority at 11 (emphasis added). For authority, the

15

majority relies on *Parkridge Associates Ltd. v. Ledcor Industries, Inc.*, where Division One of this court held: "The plain language of RCW 4.16.300, describing actions or claims 'arising from' various services, shows that the services considered in this assessment must be those that gave rise to the cause of action." 113 Wn. App. 592, 599, 54 P.3d 225 (2002) (interpreting the phrase "termination of the services enumerated in RCW 4.16.300" in RCW 4.16.310).

I believe that the statements in the majority opinion and in *Parkridge* reflect an erroneous interpretation of the term "services" as used in construction contract statutes. RCW 4.16.326(1)(g) provides that the statute of limitations begins to run at the "termination of the services enumerated in RCW 4.16.300." Nothing in RCW 4.16.326(1)(g) states or even implies that the "services" it references must be the services giving rise to the plaintiff's cause of action.

The court in *Parkridge* referenced the "plain language of RCW 4.16.300." 113 Wn. App at 599. But the services enumerated in that statute are, among others, "claims or causes of action of any kind against any person, arising from such person having constructed, altered or repaired any improvement upon real property." RCW 4.16.300.

In other words, under RCW 4.16.326(1)(g) the statute of limitations starts running at termination of *construction* services. Nothing in RCW 4.16.300 states or even implies that the services referenced in RCW 4.16.326(1)(g) must be the services giving rise to the plaintiff's cause of action.

Here, Skanska's subcontractor performed services enumerated in RCW 4.16.300 – constructing, altering or repairing any improvement upon real property – in June 2006. As a result, RCW 4.16.326(1)(g) provides that the statute of limitations did not start running until the termination of those services.

The majority concludes that a question of fact exists as to when the statute of limitations started running because the services performed in June 2006 involved the warehouse's roof, and Dania's claim involved the roof. However, in my opinion it does matter whether the June 2006 services were related or completely unrelated to Dania's claim. Under the plain language of RCW 4.16.326(1)(g), as long as the services were *construction* services as enumerated in RCW 4.16.300, the statute of limitations started running upon the termination of those services.

I would reverse and remand with directions to the trial court to dismiss Skanska's statute of limitations defense.

MAXA, J.